Pinkie A. BROWN, Plaintiff-Appellant,

v.

RETIREMENT COMMITTEE OF the BRIGGS & STRATTON RETIREMENT PLAN, and Briggs & Stratton Corporation, Defendants-Appellees.

No. 85–2172.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1986.

Decided Aug. 1, 1986.

As Amended Aug. 4, 1986.

As Amended on Denial of Rehearing and Rehearing In Banc Sept. 15, 1986.

William A. Nohr, Milwaukee, Wis., for plaintiff-appellant.

David R. Cross, Quarles & Brady, Milwaukee, Wis., for defendants-appellees.

Before HARLINGTON WOOD, JR., POSNER and FLAUM, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

The plaintiff, Pinkie Brown, appeals the district court's grant of summary judgment for the defendants in her action pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover disability benefits under the Briggs & Stratton Retirement Plan (the "Plan"), which is governed by the provisions of the Employee Retirement and Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiff contends that a dispute of material fact exists, that the Retirement Committee which administers the Plan (the "Retirement Committee" or "Committee") applied an incorrect standard of disability, that the Retirement Committee's decision is not supported by substantial evidence, and that the defendants did not accord the plaintiff procedural due process. Plaintiff asks us to reverse both the district court's decision and the Retirement Committee's decision. We affirm the district court's grant of summary judgment.

## I. FACTS

Brown began working at Briggs & Stratton in 1968 as an assembly line laborer. During her employment, she developed a disease in both hands, carpal tunnel syndrome, which affects the median nerves of the hand. Brown, who is right-handed, also suffers from dè Quervain's disease in the right wrist and thumb. These diseases cause numbness, tingling and pain in plaintiff's hands.

As a result of these symptoms, Brown was forced to stop working at Briggs & Stratton in December 1976. She subsequently underwent four operations between 1977 and 1979 to reduce the pressure

on the nerves in her hands. Dr. Alex Vinluan performed all four operations. In May 1977, Dr. Vinluan referred the plaintiff to Dr. Charles Supapodok who also examined her.

In November 1977, Brown attempted to return to work. Dr. William Curtis, the plant physician and a member of the Committee, examined her and found that Brown could only do one-handed work. At that time there was no such work available for Brown, given her seniority level. In June 1978, Brown again attempted to return to work, but again there was no work available within her limitations.

In 1979 Brown filed a worker's compensation claim in state court to determine the nature and extent of her disability and the liability for her medical expenses. In connection with the worker's compensation claim, Dr. John Docktor examined Brown in February 1980, and Dr. David Haskell examined her in April 1980. In June 1980, Brown returned to work at Briggs & Stratton, but worked only four nights due to pain in her hands. In October 1980, Dr. Jack Teasley examined Brown. In April 1981, a state hearing examiner ordered Briggs & Stratton to pay compensation and attorney's fees to Brown.

In March 1981, Brown applied to the Retirement Committee for disability benefits. On April 22, 1981, the Briggs & Stratton Workers Compensation Department informed Brown by letter that Dr. Teasley's report indicated that she was capable of returning to work with restrictions and that "light" work was available. The letter stated that Brown must report for work within five days or she would be discharged. On May 13, 1981, Briggs & Stratton sent Brown another letter stating that the company had "sedentary" work available within her limitations and that failure to report for this work within five days would result in her discharge. Brown did not report to work and was discharged. In June 1981, the Retirement Committee denied Brown's claim for disability benefits, finding that she was not totally and permanently disabled within the meaning of the Plan. In August 1981, Brown's attorney sent a written request for an appeal of the Committee's decision. In September 1981, the Committee again denied Brown's application.

Brown then brought suit in state court to recover disability benefits from Briggs & Stratton. The action was removed to federal court, and the district court denied the defendant's motion for summary judgment and remanded the case *sua sponte* to the Retirement Committee. *Brown v. Retirement Committee*, 575 F.Supp. 1073 (E.D. Wis.1983). The district court found that the letter informing Brown that her claim had been denied did not meet the level of specificity required by 20 C.F.R. § 2560.-503–1(f) and that the Committee's review procedures were unsatisfactory.

In December 1983 and January 1984, the Committee wrote Brown advising her that the Committee would consider all written material and documents submitted by February 1984. Brown's attorney requested a hearing, but this request was denied in January 1984. In February 1984, plaintiff therefore submitted additional written material for consideration. On February 21, 1984, the Committee deliberated for two and one-half hours and again denied Brown's claim. In April 1984, the Committee notified Brown's attorney of the denial by a letter with the minutes of the Committee's meeting attached. In June 1984, Brown appealed the decision to the Committee. Brown requested a review by an independent group and included a report by Dr. John Melvin dated February 1984. In June the Retirement Committee met again, considered Brown's requests, and denied both the request for an independent review and also her claim for benefits.

The plaintiff moved to reopen the case in district court in September 1984, and the judge ordered it reopened in November. In January 1985, the defendants filed a second motion for summary judgment. In support of this motion, the defendants filed an affidavit dated January 1985 from Frank Sprtel, the Corporate Insurance Manager for Briggs & Stratton. Attached to the

affidavit as exhibits were all the materials considered by the Retirement Committee during its deliberations. The plaintiff filed a brief, two affidavits, and additional documents as exhibits in opposition to the summary judgment motion. The defendants then filed a reply brief and a supplemental affidavit from Frank Sprtel dated February 1985.

The district court considered all the materials presented and granted the defendant's motion for summary judgment. The court determined that no dispute of material fact exists and that the defendants were entitled to judgment as a matter of law. The district court summarized in detail each document that the Retirement Committee considered. The judge decided that the reports of Drs. Haskell, Teasley, and Shapiro constituted substantial evidence supporting the Committee's decision. The judge also determined that the Committee properly disregarded Dr. Vinluan's and Melvin's finding of total and permanent disability because these conclusions did not take into account that Briggs & Stratton had work available that Brown was capable of performing. The court decided that ERISA does not require that a claimant be allowed to appear before the Retirement Committee, and that the composition of the Committee is set by the Plan which is the product of bargaining between Briggs & Stratton and the union. The court concluded that although ERISA requires certain procedural steps in the claims process, "matters such as union representation in the decision-making body are better left to the collective bargaining process." The plaintiff appeals each of these determinations.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> By entering a summary judgment for a party, the district court is concluding that based on the evidence upon which

the plaintiff intends to rely at trial, no reasonable jury could return a verdict for the plaintiff.... In reviewing a summary judgment, an appellate court must view the entire record and the inferences drawn therefrom in the light most favorable to the party opposing the motion.... If a study of the record reveals that inferences contrary to those drawn by the trial court might be permissible, then the summary judgment should be reversed.

*Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985). A grant of summary judgment will be overturned upon a showing of a dispute over a material fact, however the appellant must "allude to specific facts which raise a genuine issue for trial." *Linhart v. Glatfelter,* 771 F.2d 1004, 1008 (7th Cir.1985).

## III. FACTUAL DISPUTE

Reviewing the record with these principles in mind, we find that, as no inferences contrary to those drawn by the district court might be permissible, Brown has not established that a factual dispute exists. Although Brown asserts in one of the subheadings of her brief that "Summary Judgments Should Not Be Granted Where Any Dispute of Fact Exists," Brown does not explain what the factual dispute in this case is. She instead argues in that section that this court should follow the "intermediate view" of disability in interpreting the Plan, *see* section V *supra,* and that the Retirement Committee's refusal to adopt this standard was erroneous, arbitrary, and capricious. Consequently, as Brown has not alluded to specific facts in dispute, our decision depends upon whether the defendants are entitled to judgment as a matter of law.

## IV. STANDARD OF REVIEW

"A decision to deny benefits under a plan covered by ERISA will be overturned when '(1) arbitrary and capricious, (2) not supported by substantial evidence, or (3) erroneous on a question of law.'" *Wolfe v. J.C. Penney Co.,* 710 F.2d 388, 393 (7th

Cir.1983) (*quoting Peckham v. Board of Trustees*, 653 F.2d 424, 426 (10th Cir.1981)). *See Allen v. United Mine Workers of America 1979 Benefit Plan & Trust*, 726 F.2d 352, 354 (7th Cir.1984) (trustee's allocation of insufficient trust funds among beneficiaries in absence of bad faith will not be overturned unless arbitrary and capricious). Brown argues that this court should abandon the "arbitrary and capricious" standard in disability benefit cases because this analogy to trust law is inappropriate. Brown argues that a trustee protects and promotes the interests of the trust's beneficiary, but in disability benefit cases an adversarial relationship allegedly exists because the claimant seeks disability benefits and the Retirement Committee functions as "a claims adjuster of an insurance fund."

This description, however, is inaccurate. The trustee or administrator of a pension plan is required by ERISA to "discharge his duties with respect to a [pension] plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1) (1985). The trustee is liable for a breach of this fiduciary duty. 29 U.S.C. § 1109 (1985).

> [T]he fiduciary provisions of ERISA were designed to prevent a trustee "from being put into a position where he has dual loyalties, and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries."

The language and legislative history of § 302(c)(5) and ERISA therefore demonstrate that an employee benefit fund trustee is a fiduciary whose duty to the trust beneficiaries must overcome any loyalty to the interest of the party that appointed him.

*NLRB v. Amax Coal Co.*, 453 U.S. 322, 334, 101 S.Ct. 2789, 2796, 69 L.Ed.2d 672 (1981) (*quoting* H.R.Conf.Rep. No. 93–1280, at 309 (1974) U.S.Code Cong. & Admin.News 1974, p. 4639). Because the administrator of a pension plan under ERISA is bound to act in the best interests of the plan participants, just as a trustee must exercise his fiduciary duty for the trust's

beneficiary, the adoption of a standard of review from trust law is appropriate.

As the Fifth Circuit has explained:

> To protect the rights of pensioners, courts have found it necessary to subject the conduct of pension plan trustees to judicial review and correction.... However, where fiduciaries are granted broad discretion, as is generally the case with the trustees of pension trusts, courts generally limit their review and intervene in the fiduciaries' decisions only where "they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run." ... "We find this standard of judicial review, which leads neither to abdication of traditional judicial control of fiduciaries nor to excessive judicial intervention in trust operations, in harmony with federal labor policy."

*Bayles v. Central States, Southeast and Southwest Areas Pension Fund*, 602 F.2d 97, 100 (5th Cir.1979) (citations omitted).

Brown also argues that the "arbitrary and capricious" standard makes it difficult for a claimant to secure meaningful review of a plan administrator's denial of benefits. Brown misinterprets the applicable standard by saying that "[u]nder the arbitrary and capricious test it is difficult to secure a meaningful review of the decision of the plan administrator as there is virtually always some evidence the administrator can seize upon to justify a denial of benefits." The standard, however, is disjunctive. The standard is used to determine " 'whether the Trustees have acted arbitrarily, capriciously, or in bad faith; that is, is the decision of the Trustees supported by substantial evidence or have they made an erroneous decision on a question of law.' " *Wardle v. Central States, Inc.*, 627 F.2d 820, 824 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981) (*quoting Danti v. Lewis*, 312 F.2d 345, 348 (D.C.Cir.1962)). Each of the standard's three prongs thus is a separate and distinct ground for reversal. It is therefore not sufficient that an administrator have only *some* evidence to support the

decision, and Brown's argument that the standard of review prevents meaningful review is unpersuasive.

■ Brown argues that instead of reviewing the Committee's decision under the "arbitrary and capricious" standard, this court should grant her a jury trial on the merits of her disability claim. The right to a jury trial is determined by the nature of the plaintiff's cause of action. "The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, *if the statute creates legal rights and remedies,* enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) (emphasis added). In *Wardle,* 627 F.2d at 829, this court examined the statutory scheme and the legislative history of ERISA and concluded that "Congress' silence on the jury right issue reflects an intention that suits for pension benefits by disappointed applicants are equitable." *See Bugher v. Feightner,* 722 F.2d 1356, 1360 (7th Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984). *Wardle* thus disposes of Brown's claim to a jury trial to determine her eligibility for benefits.

■ Brown then argues that if ERISA is construed as not entitling her to a jury trial, "it would constitute governmental action denying the plaintiff a right to a trial, and fall within the prohibition of the fifth amendment." Brown apparently contends that Congress violated the fifth amendment by enacting ERISA which Brown alleges deprived her without due process of her seventh amendment right to a jury trial. Brown, however, received any process she was due through the legislative procedure used to enact ERISA. "When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process— the legislative process. The challenges to such laws must be based on their substantive compatibility with constitutional guarantees." J. Nowak, R. Rotunda, & J. Young, *Constitutional Law* 556 (1983).

Furthermore, Brown offers no support for her implicit argument that her supposed right to a jury trial is a property right under the fifth amendment. Brown instead states that the right to receive pension benefits is a property right protected by the due process clause, citing *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (a state could not terminate welfare benefits without a hearing), and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (decisions on eligibility for and amount of social security disability benefits must conform to the fifth amendment). Assuming *arguendo* that the determination of eligibility for disability benefits is a property right, the requirements of the fifth amendment have been satisfied here.

Brown has had several meaningful opportunities to present evidence supporting her claim and to meet the evidence against her. Brown submitted numerous medical records and doctors' reports and transcripts of the social security hearing and the worker's compensation hearing. Brown appealed the Committee's unfavorable decision and was allowed to submit additional evidence on appeal. The Retirement Committee afforded Brown several opportunities to be heard at a meaningful time and in a meaningful manner, and the due process clause does not require more.

Finally, even assuming that Brown has been deprived of a property right by having her application for disability benefits denied, the element of state action is missing here.

[T]he amendments to the Constitution which protect individual liberties specifically address themselves to actions taken by the United States or a state.... Thus whenever a suit is brought against private individuals on the basis that they have taken actions which have violated the civil or political rights of another, ... [t]here must be a determination of whether a defendant's actions constitute governmental or "state" action.

J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 497 (1983). ERISA does not

establish eligibility requirements for disability benefits or administer the private pension plans it covers. ERISA merely establishes minimum standards for fiduciaries of retirement plans to improve the soundness of such plans. *See Bugher v. Feightner,* 722 F.2d 1356, 1359 (7th Cir. 1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984). Thus the only actor here was the Retirement Committee, a private entity, not the state or an arm of the state.

■ Brown also claims that if she is not allowed a jury trial under ERISA, then ERISA violates due process because it impairs a contract obligation. Brown asserts that under the Retirement Plan in existence before ERISA was enacted, "the plaintiff would have had a right to sue for breach of contract to secure benefits, and would have been entitled to a trial, probably to a jury." Brown concludes therefore that if she is not entitled to a jury trial under ERISA, then ERISA violated due process by impairing the Retirement Plan contract.

Brown's contentions are meritless. The Contract Clause provides: "No State shall pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. This clause does not apply to the federal government, and therefore the enactment of ERISA could not have violated the Contract Clause. Furthermore, even without ERISA, Brown would not have been entitled to a jury trial under the pension plan contract. *See Sichko v. Lewis,* 191 F.Supp. 68 (W.D.Pa.1960) (suits involving eligibility of pension benefit claimants—as opposed to suits involving claimants with clear and unconditional rights to benefits—are equitable and without a right to a jury trial). "Such suits [by disappointed applicants for pension benefits] under the law of trusts have existed for quite a while in state courts and have been entertained in federal courts under their diversity jurisdiction. These suits have been considered equitable in character." *Wardle,* 627 F.2d at 829.

## V. RETIREMENT COMMITTEE'S DECISION

Brown asserts that the Committee's decision was arbitrary and capricious because the Committee did not adopt the "intermediate view" of disability, because the Committee relied upon medical reports of examinations for Brown's worker's compensation claim, because the Committee did not accept the conclusions of Drs. Vinluan and Melvin that Brown is permanently disabled, and because the Committee did not conduct an "independent medical examination" of Brown. Brown also claims that the Committee did not afford her the process due under ERISA and that the Committee's notice of denial was deficient under the regulations.

Brown urges this court to adopt the "intermediate view" of disability which the Wisconsin state courts apply in insurance disability cases. *See Harker v. Paul Revere Life Ins. Co.,* 28 Wis.2d 537, 137 N.W.2d 395 (1965); *Drexler v. All American Life & Casualty Co.,* 72 Wis.2d 420, 241 N.W.2d 401 (1976). Applying this definition of disability, Brown asserts, the Committee would be forced to conclude that Brown is permanently and totally disabled because she "is unable to perform her customary job or any job for which she is suited by her education and training."

In *Harker* the insurance contract in issue defined total disability as the "complete inability of the insured to engage in gainful occupations for which he is reasonably fitted by education, training and experience." 137 N.W.2d at 395. The disability insurance contract in *Drexler* contained a similar provision. 241 N.W.2d at 406. In the third case Brown cites, *Carporali v. Washington National Ins. Co.,* 102 Wis.2d 669, 307 N.W.2d 218 (1981), the definition of total disability was not contested, and the issue was whether the trial court's instruction defining "accidental bodily injury" was erroneous. *Id.* at 221, 226.

■ The pension plan here, however, defines disability as "[t]otal and permanent disability as determined by the Employer or

an affiliated Employer." Moreover, the Retirement Committee was not bound to apply the interpretation of disability that the state courts apply in disability insurance cases. Insurance contract interpretation principles do not govern the determination of disability benefits under a private pension plan.

ERISA preempts "any and all State laws insofar as they ... relate to any employee benefit plan." 29 U.S.C. § 1144(a) (1985).

Congress intended federal courts to develop a body of federal substantive law in interpreting or construing private welfare and pension plans. *Shaw v. Kruidenier,* 470 F.Supp. 1375 (S.D.Ia.1979), *aff'd,* 620 F.2d 307 (1980). *See Peckham,* 653 F.2d at 426 ("In actions to enforce benefit rights of pension plans covered by ERISA federal substantive law controls.").

Brown also asks us to construe the disability definition "against" the Committee as an adhesion contract because Brown herself was not involved in defining disability. *But see Harm v. Bay Area Pipe Trades Pension Plan Trust Fund,* 701 F.2d 1301, 1304 (9th Cir.1983) (standard rules of contract interpretation do not apply to pension plan interpretation). Brown may not have personally negotiated the contract, but she was represented in the negotiations by her union. The pension plan—and therefore the definition of disability—was the product of collective bargaining between Brown's union and Briggs & Stratton. We therefore do not accept Brown's argument that she was not involved in defining disability, that the definition should be "construed against" Briggs & Stratton, and that we therefore should force Briggs & Stratton to adopt the "intermediate view" of disability.

The Plan gives the employer—represented here by the Retirement Committee—broad power to define disability.

"When such a power has been conferred, the judicial role is limited to determining whether the ... [Committee's] interpretation was made rationally and in good faith—not whether it was right." *Riley v. MEBA Pension Trust,* 570 F.2d 406, 410 (2d Cir.1977). *See Harm,* 701 F.2d at 1304 (definition in pension plan must be upheld if reasonable; to overcome the plan's interpretation, claimant must show that it is arbitrary and capricious or erroneous with respect to a question of law). The defendants filed an affidavit [1] stating in part:

> The Retirement Committee has consistently interpreted § 2.3(1) of the Retirement Plan, which defines disability, by referring to the work available at Briggs & Stratton. The Committee reviews the available evidence concerning an applicant's functional limitations. Then, with that evidence in mind, the Retirement Committee, in conjunction with the Personnel Department, determines whether work is available at Briggs & Stratton within the applicant's functional limitations.
>
> If there is such work available, the claimant is considered not disabled for purposes of the Plan. If there is no work available at Briggs & Stratton, however, the Retirement Committee believes it is reasonable to conclude that the claimant would be unable to find a job anywhere.

This interpretation of the Plan, with reference to the work available at Briggs & Stratton, is rational, and Brown does not claim that the interpretation was not made in good faith. We therefore decline to disturb the Committee's interpretation of the Plan.

Brown also argues that the Retirement Committee's decision is arbitrary and capricious because the Plan itself is "contradictory and structurally defective." Brown

---

**1.** Brown objects that the district court improperly considered a supplemental affidavit filed by the defendants in support of the summary judgment motion. Brown asserts that the moving party in a motion for summary judgment is required to produce all of his evidence when the motion is filed. Fed.R.Civ.P. 56(e), however, which deals with summary judgment procedure, authorizes a district court to permit "affidavits to be supplemented."

Brown also contends that the filing of the supplemental affidavit violated the local rules of the Eastern District of Wisconsin. The rule Brown cites requires that "[e]very motion filed ... shall be accompanied by ... a supporting brief and, when necessary, an affidavit(s)." Brown concedes that the defendants filed their summary judgment motion with a supporting brief and an affidavit. The defendants therefore did not violate the district's local rules.

claims that the Plan is internally inconsistent because it states that both the employer, Briggs & Stratton, and the Committee shall determine if a claimant is disabled. Brown points out that Briggs & Stratton itself has never determined whether Brown is disabled. Brown therefore concludes that the Committee's decision is arbitrary and capricious because it does not conform to the Plan and because the Plan itself is structurally defective.

Brown cites *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund*, 701 F.2d 1301, 1305 (9th Cir.1983), as support for her argument. In *Harm*, the Ninth Circuit employed the "structural defect" test to implement the requirement under section 404 of ERISA that trustees manage pension plans solely for the benefit of plan participants and their beneficiaries. Under the "structural defect" test, "rules that exclude employees from receiving benefits for reasons which are arbitrary and capricious violate section 404."[2] *Id.* The *Harm* court stated in a footnote: "No claim is made that these rules were adopted in collective bargaining, so the standard of review in *United Mine Workers v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), does not apply." *Id.* at 1305 n. 4.

The provisions of the Plan in this case, however, were the product of collective bargaining so *Robinson* does apply. In *Robinson*, the Supreme Court rejected the imposition of a reasonableness standard to the provisions of pension plans produced by collective bargaining. The D.C. Circuit had held that

the requirement in § 302(c)(5) [of the National Labor-Management Relations Act, 29 U.S.C. § 186, which is similar to section 404 of ERISA,] that an employee benefit trust fund be maintained "for the sole and exclusive benefit of the employees ... and their families and dependents" means that eligibility rules fixed by a collective-bargaining agreement must meet a reasonableness standard. *Id.* at 570, 102 S.Ct. at 1231. The Supreme Court did not find any reasonableness requirement in section 302. The Court concluded that "when neither the collective-bargaining process nor its end product violates any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract." *Id.* at 576, 102 S.Ct. at 1234 (footnote omitted). Brown does not claim that the collective bargaining process violated any federal statute; and, as we discuss further below, the pension plan does not violate ERISA. Therefore we will not modify the terms of the Plan.

Even if the Plan had not been pursuant to collective bargaining and *Robinson* did not apply, however, neither the Plan nor the Committee's application of the Plan would have run afoul of the *Harms* "structural defect" test. Here the "rule" that excluded Brown from receiving disability benefits is the Committee's definition of disability with reference to work available at Briggs & Stratton. As discussed previously, this definition of disability is not arbitrary or capricious and therefore does not violate ERISA.

Furthermore, the Plan itself is not internally inconsistent so as to be structurally defective. Section 2.3 of the Plan defines disability as "[t]otal and permanent disability as defined by the Employer or an affiliated Employer." Section 8.2 establishes the Retirement Committee as the Plan's administrator and indicates that Committee members shall be appointed by and serve at the pleasure of Briggs & Stratton's

**2.** The court in *Miranda v. Audia*, 681 F.2d 1124 (9th Cir.1982), described the "structural defect" test in this way:

Federal court review of trust fund plans derives from 29 U.S.C. § 302(e) [of the National Labor-Management Relations Act, which has provisions similar to the relevant sections of ERISA], and is limited to consideration of "structural deficiencies." *Turner v. Local 302, International Brotherhood of Teamsters*, 604 F.2d 1219, 1227 (9th Cir.1979). Section 302(e) jurisdiction "does not extend to day-to-day fiduciary administration of welfare and pension funds." *Wilson v. Board of Trustees*, 564 F.2d 1299, 1300 (9th Cir.1977). The sole issue in this case is therefore whether the 15–year vesting requirement operates in a manner that is arbitrary or capricious or contrary to law so as to amount to a structural deficiency. *Id.* at 1125.

board of directors. Section 8.3 provides that the "Committee shall make all determinations as to the right of any person to a benefit."

■ Brown claims that the Plan is structurally deficient because it provides that both the employer and the Committee must determine if a claimant is disabled. We disagree with Brown's interpretation of the Plan. The Plan empowers the employer, Briggs & Stratton, to adopt a definition of disability which the Committee would then apply to individual claimants to determine their eligibility for disability benefits. Although the Plan's language is not as clear as it might be, this arrangement would not violate ERISA. The Committee's actual procedures for determining disability benefits also conform to ERISA requirements. In practice, the Committee has defined disability with reference to the work available at Briggs & Stratton. Briggs & Stratton apparently approves of this definition as it has not adopted a different definition although section 2.3(1) authorizes it to do so. Neither the conceptual arrangement of the Plan nor the actual implementation amounts to a structural defect that would violate ERISA.

Brown next asserts that the Committee's decision was not supported by substantial evidence because the Committee relied upon medical examinations made in connection with Brown's worker's compensation claim. Brown argues that the disability test under Wisconsin worker's compensation law differs from that which should be applied to Brown's disability. Brown asserts that the medical examinations not performed specifically for the Committee's determination of disability do not constitute substantial evidence. Brown cites no authority for this position, and we do not find this argument persuasive. The purpose of the medical examination does not detract from the physician's medical findings. Brown implicitly concedes this point by urging this court to overturn the Committee's

decision based upon Dr. Vinluan's examinations, two of which were performed in connection with Brown's worker's compensation claim. While the purpose of the medical examination may affect the scope of the exam and thus may affect the weight to be accorded such evidence, the results of the medical examinations were relevant evidence of the nature and extent of Brown's disability.

■ Furthermore, the Committee did not err in considering the medical evaluations obtained in connection with Brown's worker's compensation claim. Brown's argument that these reports do not constitute substantial evidence because the doctors did not take into account "the impairment of the claimant's earning capacity in the light of her education and job training" is unpersuasive.[3] First, several of these reports do offer conclusions on such impairment. Second, Brown's argument is another attempt to have this court force the Committee to adopt an "intermediate" definition of disability, instead of determining disability with reference to work available at Briggs & Stratton. As discussed previously, a definition of disability in light of work available at Briggs & Stratton is not arbitrary and capricious, and we decline to impose a different definition of disability. Third, Brown would have this court accept Dr. Vinluan's testimony and reports made in connection with her worker's compensation claims, but disregard medical reports unfavorable to her position. However, as stated before, this court will not review the evidence in this case *de novo;* and the Committee was not bound to accept only evidence supporting Brown's claim.

Brown contends that loss of earning capacity is at issue here because "[t]he question to be determined is whether the claimant is totally and permanently disabled from engaging in her regular occupation or any occupation for which she is reasonably fitted by education, training, and experience." We will not, however, make a *de*

---

3. Under Wisconsin worker's compensation law, evidence of loss of earning capacity is not considered in a claim for a scheduled injury to the hands. *Mednicoff v. Dep't. of Indus., Labor &*

*Human Relations,* 54 Wis.2d 7, 194 N.W.2d 670, 672 (1972) ("where the injury is scheduled or relative, the loss of earning capacity is inherent in the schedule").

*novo* determination of Brown's entitlement to disability benefits under the Plan. "In reviewing a fiduciary's decision, '[a] federal court is to focus on the evidence before the truste[e] at the time of [his] final decision and is not to hold a *de novo* factual hearing on the question of applicant's eligibility.'" *Wolfe v. J.C. Penney Co.,* 710 F.2d 388, 394 (7th Cir.1983) (*quoting Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820, 824 (7th Cir. 1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981)). Brown's contention obscures the real inquiry here: whether the Committee's decision to deny benefits is supported by substantial evidence. Wisconsin worker's compensation law and loss of earning capacity are irrelevant to this issue. Contrary to Brown's assertion, loss of earning capacity is not the issue here. The only issue is whether the doctors' reports and the other material considered by the Committee provided substantial evidence for the denial of benefits.

The minutes of the February 21, 1984 meeting indicate that the Committee considered numerous doctors' reports, transcripts of Brown's worker's compensation hearings, the worker's compensation examiner's findings and order, and Brown's social security determination. The record contains substantial evidence supporting the Committee's decision. We agree with the district court's assessment of this evidence:

> Plaintiff's primary challenge is to the sufficiency of the evidence supporting denial of her application as compared to the evidence supporting her application. True, the reports and testimony of Dr. Vinluan, and the reports of Dr. Melvin, support a conclusion that plaintiff has lost all earning capacity and that she is totally and permanently disabled. Countervailing this evidence were the reports of Drs. Haskell, Teasley and Shapiro,

which recognized impairments in plaintiff's dexterity but did not conclude that plaintiff was totally disabled. These reports constitute substantial evidence.

Moreover, the Retirement Committee could properly discredit Drs. Vinluan's and Melvin's conclusions that plaintiff was permanently and totally disabled, because these conclusions did not account for the fact that Briggs & Stratton had determined that there was work available at its plant that plaintiff was capable of performing. The precise nature of this work has not been disclosed, but presumably it was dissimilar to that plaintiff had performed before the onset of her affliction. The Retirement Committee acted within its authority in considering this factor in determining that plaintiff was not disabled. The plan expressly confers broad authority to determine what constitutes total and permanent disability on the employer, and judicial review of a decision rendered pursuant to such a provision is limited to a determination of whether the decision is arbitrary or capricious. *Donaldson v. Hamburg Savings Bank,* 568 F.Supp. 897, 899–90 (E.D.N.Y.1983). It is neither arbitrary nor capricious for an employer to consider the availability of work it may have that a disability benefits claimant may perform when determining whether that claimant is totally disabled.

No doctor's report indicates that Brown is 100 percent permanently disabled in one or both hands. Dr. Vinluan's reports reflect his opinion that Brown could not get work with her hand condition, but his medical findings only indicate a 50 percent loss of use in the right hand and 15 percent loss in the left.[4] The committee did not act arbitrarily and capriciously in denying disability benefits considering the medical assessments of Brown's condition and the

---

4. Brown also argues that the Committee ignored the reports of Drs. Vinluan and Melvin. The Committee meeting's minutes indicate, however, that the Committee did not ignore these reports, but rather chose to disregard only the ultimate conclusion that Brown could never find any gainful employment. The Committee did not act arbitrarily and capriciously in preferring to reach its own conclusion about the availability of work at Briggs & Stratton within Brown's limitations.

availability of work within her limitations at Briggs & Stratton.

## VI. DUE PROCESS CLAIM

Brown asserts that the Committee has again failed to comply with the procedures set forth in ERISA, 29 U.S.C. § 1133,[5] and in the regulations, specifically 29 C.F.R. § 2560.503–1(f).[6] Brown contends that the Committee failed to comply by not adopting a written claims procedure, by refusing to allow Brown to appear before the Committee or to present witnesses, by having the Committee review its own decision, by not having a labor representative on the Committee, and by failing to describe any additional material necessary to perfect her claim on appeal.

 Brown argues that the Committee violated section 1133 by failing to adopt written rules or claims procedures. Section 1133, however, does not explicitly require written claims procedures. Furthermore, the case Brown relies upon, *Grossmuller v. International Union, UAW,* 715 F.2d 853 (3d Cir.1983), does not support her argument. The *Grossmuller* court did not hold that due process under ERISA mandates that a plan administrator adopt written procedures. The *Grossmuller* court held that "the absence of any written claims procedures, as well as the inadequacy of the pension plan's unwritten practices, deprived Grossmuller of the protections afforded by ERISA for his interests in the pension plan." *Id.* at 858. As discussed

previously, the Committee's unwritten practices did not deprive Brown of due process under ERISA. Moreover, the pension plan in *Grossmuller* specifically directed the plan's administrator to promulgate written rules or regulations. The plan here, however, contains no such requirement. The Briggs & Stratton Plan states that "[t]he Committee *may* adopt such bylaws and regulations as it deems desirable for the conduct of its affairs." Section 8.7, at VIII–5 (emphasis added). This language clearly leaves the adoption of bylaws to the Committee's discretion.

Furthermore, the plan administrator in *Grossmuller* also failed to inform the claimant what evidence had been considered and relied upon in denying benefits, refused to allow the claimant to examine or rebut the evidence, failed to ascertain any other facts or interview the claimant, and refused to allow the claimant to appear at the hearing although a third party was allowed to testify. In this case,, the Committee allowed Brown to submit any documentary evidence she wished, gave her a detailed list of the evidence reviewed, and allowed her to present more evidence on appeal.

Finally, Brown has not explained how the absence of written bylaws has deprived her of due process. Letters from the Committee to Brown and to her attorney clearly set forth the procedures for reviewing her application. The amount of evidence Brown submitted and the list of objections to evidence in her attorney's appeal letter

---

**5.** Section 1133 provides:
> In accordance with regulations of the Secretary, every employee benefit plan shall—
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (1985).

**6.** The regulation provides:
> (f) *Content of notice.* A plan administrator ... shall provide to every claimant who is

denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
> (1) The specific reason or reasons for the denial;
> (2) Specific reference to pertinent plan provisions on which the denial is based;
> (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
> (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f) (1985).

indicate that Brown availed herself of the opportunities available to present and rebut evidence.

Brown next contends that she was deprived of a full and fair review of her claim because she was never allowed to appear at the hearing nor was she interviewed or allowed to explain in person to the Committee why she believes she is disabled. Brown also complains that her attorney was not allowed to appear before the Committee nor was she allowed to present the live testimony of her doctors at the hearing.

*Grossmuller* addressed the parameters of "full and fair review" under section 1133 by examining the concept within the administrative law context. The court found that " '[f]ull and fair' does not necessarily require a 'trial-like atmosphere complete with attorneys to challenge offered evidence and legally trained hearing officers to rule on evidentiary questions.' ... The decision-maker need not hear oral testimony; a written record will suffice." 715 F.2d at 858 n. 5 (*quoting Toney v. Reagan,* 467 F.2d 953, 958 (9th Cir.1972), *cert. denied sub nom. Mabey v. Reagan,* 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973)). The *Grossmuller* court concluded:

> [T]he persistent core requirements of review intended to be full and fair include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.

*Id.* These "core requirements" have been satisfied in this case. Brown had the opportunity to present as much documentary evidence as she wished. The record indicates that the Committee considered all the evidence submitted before reaching its decision, and the Committee furnished Brown with a copy of the minutes of its hearing which listed the evidence relied upon and contained the Committee's comments about the evidence. The record indicates that Brown received a full and fair review.

Brown also complains that she did not have a meaningful appeal because the Committee reviews its own decision. Brown asserts that "[a] full and fair review would also seem to require that any appeal be considered by different personnel." Once again Brown fails to cite any authority for this position. Section 1133 requires every benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2) (1985). The regulations provide:

> Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has *a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary* or to a person designated by such fiduciary, and under which a full and fair review of the claim and its denial may be obtained....
>
> [T]he *"appropriate named fiduciary" for purposes of this section may be the plan administrator* or any other person designated by the plan, provided that such plan administrator or other person is either named in the plan instrument or is identified pursuant to a procedure set forth in the plan as the person who reviews and makes decisions on claim denials.

29 C.F.R. § 2560.503–1(g)(1) and (2) (1985) (emphasis added). The regulations thus specifically provide that the plan administrator may be the "appropriate named fiduciary" who handles the appeals of denied claims if the plan specifically designates the administrator as such.

Section 8.1 of the Plan states that the "Committee shall have the sole responsibility for the administration of this Plan." Section 8.2 provides that the "Plan shall be administered by a Retirement Committee consisting of at least three persons but not more than five persons who shall be appointed by and serve at the pleasure of the Board of Directors of the Employer." Section 8.3 provides that "the Committee shall

afford a reasonable opportunity to any Participant or beneficiary whose claim for benefits has been denied for a review of the decision denying the claim." The Briggs & Stratton Retirement Plan thus specifically designates the Retirement Committee as the "appropriate named fiduciary" to review and make decisions on claim denials. Therefore consideration of Brown's appeal by the Committee satisfied the section 1133 requirement of "a full and fair review by the appropriate named fiduciary."

 Brown next argues that she was deprived of a full and fair review because the Committee does not have any labor representatives as members. Her initial brief includes a conclusory argument that because only management is represented on the Committee it has "a built in bias against claimants." She argues that the composition of the Committee thus "biased" it against her and precluded a full and fair review of her claim. The district court opinion sufficiently addressed this claim. The district court noted that the Committee's composition is determined by the Plan and that the terms of the Plan are the subject of collective bargaining between Brown's union and Briggs & Stratton. The court therefore concluded that the composition of the Committee did not violate ERISA's procedural requirements and that "matters such as union representatives in the decision-making body are better left to the collective bargaining process."

 On appeal Brown injects a new aspect of this issue into her argument. Brown for the first time argues in her reply brief that the composition of the Committee violates the National Labor-Management Relations Act. Section 186 of the Act requires that employers and employees must be equally represented in the administration of a pension benefit fund. 29 U.S.C. § 186(c)(5). Brown did not argue this to the district court, and "it is a well-established general proposition that 'a litigant cannot present to [the Circuit Court of Appeals] as a ground for reversal an issue which was not presented to the trial court

and which it, therefore, had no opportunity to decide.'" *Mattingly v. Heckler*, 784 F.2d 258, 261 n. 2 (7th Cir.1986) (*quoting United States ex rel Cole v. Lane*, 752 F.2d 1210, 1219 (7th Cir.1985)). Furthermore, Brown did not make this argument in her initial brief on appeal, and "[i]ssues appearing for the first time in a reply brief will not be considered by this Court." *In re Bear*, 789 F.2d 577, 579 (7th Cir.1986). Consequently, we need not consider Brown's claim that the composition of the Retirement Committee violates section 186 of the National Labor-Management Relations Act.

Brown's final argument is that the Committee's notice of denial of benefits did not comply with regulations enacted pursuant to section 1133 of ERISA. The regulations require the denial notice to include "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material is necessary." 29 C.F.R. § 2560.503–19(f)(3) (1985).

 The Committee's notice consisted of a letter from Briggs & Stratton's attorney with a copy of the minutes of the Committee's meeting attached. The letter stated:

Based on a review of all the information, the Retirement Committee voted unanimously that Ms. Brown was not permanently and totally disabled, as required to receive disability benefits under Sections 4.4 and 2.3(1) of the Briggs & Stratton Retirement Plan. We have included for your information, and incorporate herein by reference, the Minutes of the Committee's meeting. These Minutes describe the various pieces of evidence considered by the Retirement Committee and the reasoning behind its ultimate decision.

The minutes identified each item considered by the Committee and included the Committee's assessment of that item and the weight given to it.

Although the letter alone would not have complied with the regulations, the letter

and the attached minutes are sufficient. The Committee's comments in the minutes about each item considered sufficiently indicate the reasoning underlying the Committee's decision. The minutes indicate that the Committee considered numerous items and that the decision to deny benefits was based upon the information contained in the documents already submitted. The minutes therefore indicate that the Committee did not need any additional information or additional documents to perfect Brown's claim. The Committee's comments in the meeting as reflected in the minutes were sufficient to apprise Brown of the reason for the denial and alert her to any deficiency in the record.

Brown's comprehension of alleged deficiencies in the record before the Committee is demonstrated by the June 12, 1984 letter from her attorney to the attorney for Briggs & Stratton. In that letter Brown explains in detail her objections to the Committee's findings and to the Committee's characterizations of certain evidence. Brown attached to this letter an additional medical report dated February 15, 1984, from Dr. Melvin to be submitted for review.

Considering all the circumstances, the denial letter accompanied by the minutes of the Committee's meeting was sufficient to substantially comply with 29 C.F.R. § 2560.503–1(f). *See Wolfe v. J.C. Penney,* 710 F.2d 388, 392 (7th Cir.1983) ("in order to satisfy 29 U.S.C. § 1133, a denial letter must substantially (not strictly) comply with 29 C.F.R. § 2560.503–1(f)").

## VII. CONCLUSION

Although some aspects of the Plan and the Committee's procedures are troublesome, in the circumstances of this case, where the Committee's definition of disability is not arbitrary and capricious, where several doctors gave opinions that Brown could do sedentary work within certain limitations, and where Brown chose not to report for work even though Briggs & Stratton had notified her that work within her limitations was available, the district court was correct in granting summary judgment. Brown does not allude to any specific facts which raise a genuine issue of material fact, and we conclude that Briggs & Stratton is entitled to judgment as a matter of law because the Retirement Committee's decision was not arbitrary and capricious and is supported by substantial evidence. The district court's decision is therefore

AFFIRMED.