Donald SCHMERTMANN, Plaintiff,

v.

INTERNATIONAL PAINTERS AND ALLIED INDUSTRY PENSION FUND; Gary J. Meyers as Fund Administrator of the International Painters and Allied Industry Pension Fund; and Local 90 International Brotherhood of Painters and Allied Trades, Defendants.

No. 03–CV–3081.

United States District Court,
C.D. Illinois,
Springfield Division.

Jan. 26, 2005.

Dale A. Schempp, Springfield, IL, for Plaintiff.

Jennifer B. Liebmann, Jennings Sigmond, PC, Philadelphia, PA, Lisa Williams, Robert B. Greenberg, Stephen Feinberg, Asher, Gittler, Greenfield & D'Alba, Ltd., Chicago, IL, for Defendants.

## *OPINION*

RICHARD MILLS, District Judge.

Cross motions for summary judgment.

### I.  FACTS

Plaintiff Donald Schmertmann ("Schmertmann") was a Union Painter with Defendant Local No. 90, Springfield, Illinois from 1958 to his retirement in 2000. Schmertmann participated in the Illinois State Painter's Pension Plan. The Illinois Plan merged with the International Painter's and Allied Trades Industry Pension Fund ("the Fund") in 1980. Schmertmann then became a participant in the Fund.

Schmertmann retired in April 2000 and applied for retirement benefits the following month. The Fund began sending Schmertmann monthly payments of $587.50. Schmertmann believed that he was entitled to monthly payments of $2,349.54 and he asked the Fund about the difference.

The Fund informed Schmertmann that he was entitled to 300 pension credit hours for work done prior to the merger. Schmertmann believed that he was entitled to 360 pension credit hours. The Fund also stated that Schmertmann had two "breaks in service" that resulted in the lower payments. A "break in service" occurs when a participant fails to earn three units (150 hours) of pension credit in three consecutive years. According to the Fund, Schmertmann had a break in service from 1984 to 1986 and a second break in service from 1995 to 1997. The Fund calculated

Schmertmann's benefits by using a "dollar multiplier"—the number of units of pension credits multiplied by a dollar figure based on the rate of contributions paid for his work. Benefits for service before a "break in service" are calculated using the dollar multiplier in effect at the time of the break.

Had the Fund determined that Schmertmann did not have any breaks in service, it would have used the higher dollar multiplier in effect at the time he retired. The Fund, however, calculated Schmertmann's benefits using the lower dollar multipliers in effect at the time of each break for each period of service prior to the break. This is what caused Schmertmann's pension benefits to be lower.

Schmertmann disputed the Fund's calculation. On May 17, 2001, he appealed to the Fund's Trustees for a re-calculation of his benefits. Schmertmann also asked if he could make contributions to the Fund for the periods in question so that he could avoid any breaks in service. The Trustees denied both requests in a letter dated August 27, 2001. Dissatisfied, Schmertmann sued the Fund pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Specifically, Schmertmann alleges he is entitled to relief under § 1132(a)(1)(A)-(B), § 1132(a)(3)(A)-(B).[1] He and the Fund each move for summary judgment.

## II.  STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, courts must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir.1997).

## III.  ANALYSIS

■ A denial of benefits challenge under § 1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard if a "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe

---

1. In relevant part, § 1132 states:
(a) Persons empowered to bring a civil action
A civil action may be brought—
(1) by a participant or beneficiary—
 (A) for the relief provided for in subsection (c) of this section, or
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; ...
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ....

the terms of the plan." *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In the instant case, § 2.10 of the 1999 Plan states "[t]he Trustees may interpret that Plan and have full discretion to determine all questions of fact or law arising in the administration, interpretation, and application of the Plan." The decisions of the Fund are therefore subject to review under the arbitrary and capricious standard.

■ "A decision is arbitrary or capricious only when the decision maker 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence ... or is so implausible that it could not be ascribed to difference in view or the product of ... expertise.'" *Trombetta v. Cragin Federal Bank for Savings Employee Stock Ownership Plan,* 102 F.3d 1435, 1438 (7th Cir. 1996). A plan administrator's decision is not arbitrary or capricious "if it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Id.* at 1438; *Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Bhd. of Teamsters,* 984 F.2d 762, 765 (7th Cir.1993)(same). Thus, a participant must show a plan administrator's decision was "downright unreasonable" in order to succeed on his claim. *See Chojnacki v. Georgia–Pacific Corp.,* 108 F.3d 810, 816 (7th Cir.1997).

Schmertmann argues that the Plan's "break in service" clause is invalid because it creates an impermissible structural defect in the Plan; he was never given notice of its existence; and it violates the anti-cutback provisions of ERISA. Schmertmann further contends that he was never given a full and fair opportunity to appeal and that the Fund should be estopped from applying the "break in service" clause against him because his union representative assured him that he would not be penalized for taking employment with various government agencies. Finally, Schmertmann argues that the Fund acted arbitrarily and capriciously when it denied him pension credits.

### A. Schmertmann's Summary Judgment Motion

■ Parties who appear before the Court must comply with its Local Rules. Local Rule 7.1(D)(1)(c) sets forth the bare necessities of what a party must include the argument section of a summary judgment motion. According to the rule a party must:

> Under an appropriate subheading for each separate point of law, explain the legal point, with citation to authorities, and why or how the application of that point to the undisputed material facts entitles [the] movant to the relief sought.

*Id.*

The argument section of Schmertmann's summary judgment motion fails to comply with Local Rule 7.1(D)(1)(c). It does not explain a single legal point, cite a single authority, or apply a single point to an undisputed material fact. This violates the Local Rule and it is generally unacceptable under our adversarial legal system. *See United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir.1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *United States v. Amerson,* 185 F.3d 676, 689 (7th Cir.), *cert. denied,* 528 U.S. 1029, 120 S.Ct. 549, 145 L.Ed.2d 427 (1999) ("Given our adversarial system of litigation, it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (internal citations and quotations omitted). Ac-

cordingly, the Court will strike Schmertmann's summary judgment motion.

### B. The Fund's Summary Judgment Motion

#### 1. Structural Defect

■ Schmertmann claims that the existence of a "break in service" clause in the Plan constitutes a "structural defect" that violates 29 U.S.C. § 1104(a). Section 1104(a)[2] imposes a duty of care with regard to the management of existing trust funds on plan fiduciaries.

Under ERISA, however, trustees of a Fund are "plan sponsors." *See* 29 U.S.C. § 1102(16)(B) ("The term 'plan sponsor' means ... (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organi-

zations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan."). Plan sponsors are generally free to adopt, modify, or terminate pension plans. *See Lockheed Corp. v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). When plan sponsors undertake the preceding actions, they are not acting as fiduciaries, but are analogous to settlors of a trust. *See id.*

Because the Trustees were sponsors—not fiduciaries—they did not owe Schmertmann any fiduciary duty. *Id.* Therefore, Schmertmann cannot establish a structural defect under § 1104(a).

#### 2. Failure to Give Notice

■ ERISA's § 1024(b) details the statute's notice provisions.[3] Schmertmann

---

**2.** This section provides:

(a) Prudent man standard of care
(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a *fiduciary* shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.
*See* 29 U.S.C. § 1104 (emphasis added).

**3.** This section states:

(b) Publication of summary plan description and annual report to participants and beneficiaries of plan
Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:
(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a)(1) of this title—
(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or
(B) if later, within 120 days after the plan becomes subject to this part.
The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 1022 of this title which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply
. . . .
(2) The administrator shall make copies of the latest updated summary plan description

claims the Fund violated § 1024(b) because it failed to send him copies of its 1995 Plan and 1999 SPD—two items that explained the Fund's "break in service" clause. The Fund alleges that it sent Schmertmann these and other Plan documents. The difference in these assertions creates a genuine issue of material fact.

### 3. Anti-cutback Rule

■ The Fund seeks summary judgment in its favor on Schmertmann's claim that the break in continuity clause of the Plan violates the "anti-cutback" rules of 29 U.S.C. § 1054(g).[4] "[T]he essential elements of a [§ 1054(g)] violation are: 1) a plan amendment, and 2) a reduction in accrued benefits." *Dooley v. American Airlines, Inc.*, 797 F.2d 1447, 1451 (7th Cir.1986).

■ Schmertmann contends that the term "break in continuity" was not added to the Plan or any of the SPD's until December 13, 2002, some two and a half years after he retired. According to Schmertmann, the addition of the term "break in continuity" violates § 1054(g) because it led to a reduction in his benefits. Assuming that Schmertmann is correct regarding the date the term "break in continuity" was added to the Plan, he still cannot establish a violation of § 1054(g).

As the Seventh Circuit explained in *Dooley*, not all changes to a plan are "plan amendments." In *Dooley*, the plan gave plan administrators authority to change actuarial assumptions from time to time. The plan administrators used their authority to change from a fixed actuarial assumption to a floating actuarial assumption that altered the method for computing lump sum payments. The Seventh Circuit held that this change in actuarial methods by the plan administrators did not constitute a "plan amendment." The plan administrators were exercising their authority under the plan and that the change did not therefore violate § 1054(g). *See Dooley*, 797 F.2d at 1452.

Here, the addition of the phrase "break in continuity" is far less drastic than the change in *Dooley*. Regardless of whether

---

and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).

(3) Within 210 days after the close of the fiscal year of the plan, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 1023(b)(3) of this title and such other material (including the percentage determined under section 1023(d)(11) of this title) as is necessary to fairly summarize the latest annual report.

(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, [*sic*] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. . . .

4. Section 1054(g) provides:

Decrease of accrued benefits through amendment of plan

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) of this title.

(2) For purposes of paragraph (1), a plan amendment which has the effect of—

(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

(B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. . . .

29 U.S.C. § 1054(g).

the provision was titled "computation of benefits" in § 3.20 of the 1995 Plan or "benefit break in continuity" in § 5.10 of the 1999 Plan, the underlying mechanism for calculating pension rates remained the same. As a result, this change in nomenclature does not constitute a "plan amendment" and, therefore, does not violate § 1054(g).

### 4. Full and Fair Review

■ "ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review' by the administrator." *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 688 (7th Cir. 1992). The core requirements of a full and fair review include "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Brown v. Retirement Comm. of Briggs & Stratton Retirement Plan,* 797 F.2d 521, 534 (7th Cir.1986).

■ Schmertmann argues that he was never informed that his monthly pension benefits were being reduced due to his "break in continuity" until he received an August 27, 2001, letter denying his appeal. He, therefore, claims that the clause cannot be used as a basis for denial since he never had an opportunity to contest it prior to the appeal.

Although it may be true that the term "break in continuity" was not expressly used prior to the August 27 letter, the evidence clearly shows that Schmertmann's failure to engage in covered employment from 1984–1986 and 1994–1998 was the reason the Fund reduced his benefits. The Fund explained this at length in the March 5, 2001, letter it sent to Schmertmann's counsel. The March 5,

2001, letter also identified the computation of benefits section the Fund used to calculate Schmertmann's benefits. *See id.* In a letter dated March 7, 2001, Schmertmann's counsel acknowledged receipt of the Fund's March 5, 2001, letter. Next, Schmertmann received a letter dated May 11, 2001, from the Fund notifying him of the appeals process. Schmertmann subsequently appealed and the administrator denied the claim due to Schmertmann's break in continuity.

This evidence shows that Schmertmann knew what evidence the administrator relied upon, that he had an opportunity to address the evidence, and that the administrator considered the evidence before reaching and rendering his decision. Accordingly, the Fund is entitled to summary judgment on this claim.

### 5. Equitable Estoppel

Schmertmann claims that he began working for the school district and other unspecified employers based on job referrals from a local union business agent. The agent assured Schmertmann that even though these employers did not contribute to the pension fund, his pension benefits would not be adversely affected. Schmertmann argues that the agent's assurances equitably estop the Plan from denying his benefits claim.

There is a split of opinion in the circuits over whether equitable estoppel applies to a multi-employer plan such as the one at issue here. *See Coker v. Trans World Airlines, Inc.,* 165 F.3d 579 (7th Cir.1999) (discussing split). In a fairly recent case, the Seventh Circuit decided not to weigh in on the issue because the plaintiff failed to make out the elements of an estoppel claim. *See Shields v. Local 705, Int'l Broth. of Teamsters Pension Plan,* 188 F.3d 895, 900 (7th Cir.1999).

■ The traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel. *See In re Larson*, 862 F.2d 112, 115 (7th Cir.1988) (quoting *United States v. Asmar*, 827 F.2d 907, 912 (3rd Cir.1987)). The burden of proof is on the party claiming estoppel. *Id.*

■ Although Schmertmann may have relied on the local union agent's assurances, he offers no evidence to show that union agent was an agent of the Plan. Schmertmann had the burden of proving this. His failure to do so prevents him from asserting that the union agent's misrepresentation binds the Plan. Accordingly, Schmertmann cannot establish the first element of equitable estoppel and the Court need not decide whether the doctrine applies here.

### 6. Break in Service/Break in Continuity

■ Plan documents from 1976, 1983, 1988, 1994, 1995 and 1999 all contain "break in continuity" or "break in service" clauses. These clauses allow pension benefits to be reduced for employees who fail to earn specified pension credits within a calendar year.

Schmertmann claims that the "break in service" and "break in continuity" clauses cannot be used against him because he never received any Plan documents prior to his retirement. Moreover, § 4.02(b)(3) of the 1995 Plan and § 5.02(c)(3) of the 1999 Plan contain provisions which allow employees who worked for employers that did not contribute to the pension fund, but who fulfilled all terms and conditions of the applicable collective bargaining agreements as though they were contributing employers, to receive credit for each calendar year the employee was regularly employed prior to the Contribution Period.[5] Schmertmann argues that his work for school district from 1984-86 and 1995-1997 satisfies § 4.02(b)(3) of the 1995 Plan and § 5.02(c)(3) of the 1999 Plan.

The Fund asserts it would be improper to give Schmertmann pension benefits for working non-contributory jobs because it would reduce the pensions of those workers whose employers paid into the pension fund. Additionally, the Fund asserts that all of Schmertmann's work with the non-contributory school district came after the Local 90 employers joined the International Painter's and Allied Trades Industry Pension Fund in 1980 and, therefore, is not covered by these sections. *Id.*

Although it would appear unwise to provide pension benefits to union workers whose employers did not contribute to the union's pension fund, the Fund points to no language in the Plan to show that Schmertmann's interpretation of Section 4.02(b)(3) of the 1995 Plan and § 5.02(c)(3) of the 1999 Plan is invalid. Furthermore, the Fund does not explain how the 1980 merger invalidated these provisions and it has not proven that it mailed Schmertmann any Plan documents such that they can be used against him.

In short, there are genuine issues of material fact about the validity and application of § 4.02(b)(3) of the 1995 Plan and § 5.02(c)(3) of the 1999 Plan and whether the Fund sent Schmertmann Plan documents. The parties must present evidence to resolve these matters. As such, the case will be set for trial.

---

**5.** The "Contribution Period" refers to the time after the Plan was established and an employer began making contributions.

*Ergo,* Plaintiff Donald Schmertmann's Motion for Summary Judgment is STRICKEN.

Defendants' Pension Fund and Fund Administrator's Motion for Summary Judgment is ALLOWED in all respects except as to Schmertmann's claims that: (1) the Fund never sent him Plan documents; and (2) he had no "break in service" or "break in continuity" given § 4.02(b)(3) of the 1995 Plan and § 5.02(c)(3) of the 1999 Plan. The case will go to trial on these two issues.

IT IS SO ORDERED.