Currie, C. J.
 

 Defendant advances these contentions on this appeal:
 

 (1) The fact that plaintiff worked for a period of ten months after the accident at the same job at which he was employed prior to the accident conclusively establishes as a matter of law that his disability was not continuous from the date of accident.
 

 (2) The stiff left wrist and substantial loss of grasp in plaintiff's left hand does not qualify him as a person totally disabled within the definition of total disability set forth in the policy.
 

 (3) Partial disability and total disability as defined by the policy are mutually exclusive, and, therefore, the trial court committed prejudicial error in refusing to instruct the jury as to the meaning of partial disability.
 

 (4) The trial court further erred in failing to include welding as a former occupation of plaintiff when the court enumerated such former occupation in its instructions.
 

 The pertinent policy provisions are as follows:
 

 “Definitions of disability : The term ‘total disability,’ whenever used in this policy, shall mean complete inability of the insured to engage in gainful occupations for which he is reasonably fitted by education, training and experience. The term ‘partial disability,’ whenever used in this policy, shall mean the inability of the insured to perform one or more of his important regular business duties.
 

 “A. Total disability — accident. If such injuries result in continuous total disability within ninety days from
 
 *546
 
 the date of the accident, requiring the regular and personal attendance of a licensed physician, the Company will pay the Monthly Indemnity during the continuance of such total disability, commencing on the first day thereof and for a period not exceeding thirty months for any one continuous disability. . . .
 

 "Extended benefit rider — accident The Monthly Indemnity provided in Clause A of the attached policy for total disability from accidental bodily injuries shall continue beyond the period provided in such Clause so long as the insured lives and suffers continuous total disability, as defined in such policy, from the date of the accident. . . .”
 

 Keeping in mind these policy provisions we will consider each of the four issues raised by defendant.
 

 Effect of Ten Months’ Full-time Employment Subsequent to Accident.
 

 As defendant points out, in order for plaintiff to recover under the extended-benefit rider of the policy, he must establish that he has been continuously totally disabled from the date of the accident, within the meaning of the policy definition of total disability. Even if plaintiff has been totally disabled since completion of his period of employment from April 11, 1960, to February 16, 1961, he cannot now recover total-disability payments if he was not totally disabled during this period of employment.
 

 Defendant cites
 
 De Bonville v. Travelers Ins. Co.
 

 [1]
 

 and
 
 Bader v. Travelers Ins. Co.
 

 [2]
 

 as holding that this ten-month period of full employment of plaintiff conclusively establishes as a matter of law that he was not totally disabled during such period.
 

 
 *547
 
 The material facts in
 
 De Bonville
 
 are these: Plaintiff insured, while employed in a consulting capacity by National Pressure Cooker Company, suffered a heart attack on November 6, 1951. He was insured by defendant insurance company under a group policy with his employer that provided certain benefits if he became “ ‘wholly disabled by bodily injuries or disease, and will be permanently, continuously, and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit. . . .’ ”
 
 [3]
 
 On or about October 1, 1953, the insured took employment as the salaried manager of another corporation, the Aloa Corporation, and continued in such employment until February 16, 1954, when he suffered a second heart attack. For reasons not here material his claim for total-disability benefits had to be grounded on the first heart attack of November 6, 1951. This court held that the insured’s employment by Aloa Corporation on a salary for several months after such first heart attack'prevented the insured from claiming physical inability for life to engage in any occupation for wage or profit.
 

 The
 
 De Bonville Case
 
 is clearly distinguishable from the instant case even if it be assumed that difference in wording of the total-disability clauses of the two policies is not material. There was no showing made in
 
 De Bonville
 
 that the insured was unable to perform the managerial duties for which he was paid a salary while in the instant case there is testimony that plaintiff was unable to perform a substantial part of the duties of his job and it was necessary for other employees to assist him.
 

 Bader v. Travelers Ins. Co., supra,
 
 involved an action to recover premiums paid on two life insurance policies which provided for waiver of premiums during the total disability of the insured. The policies defined total disability in terms
 
 *548
 
 of the language used in the
 
 De Bonville Case.
 
 Two of the years during which plaintiff insured claimed he was totally disabled were 1959 and 1960. He was president and owner of a company which acted as a manufacturer’s representative deriving income from commissions, rentals, and investments from May, 1959, through the year 1960. During this period the insured worked some hours each day and traveled in Milwaukee and to Racine and Kenosha. His income from these activities was $2,800 and $2,600 for 1959 and 1960, respectively. The insured submitted a medical report dated May 4, 1959, in which the physician stated his conclusion that the history and physical findings support restriction of the insured’s activities amounting to total disability. The court held for defendant and stated:
 

 “The undisputed fact of plaintiff’s gainful employment during the years in question overcomes the claim of total disability for said period. The medical report speaks for the date of its execution. The medical opinion as to Mr. Bader’s total disability does not change the actual fact of his gainful employment. There is, therefore, no total disability within the terms of the policy.”
 
 [4]
 

 There appears to have been no showing made that the insured in
 
 Bader
 
 was unable to perform the services for which he received remuneration as in
 
 De Bonville.
 
 This distinguishes that case from the instant one.
 

 Defendant also cites on this point two earlier Wisconsin cases,
 
 Saveland v. Fidelity & Casualty Co. of New York
 

 [5]
 

 and
 
 Merrill v. Travelers’ Ins. Co.
 

 [6]
 

 The
 
 Saveland Case
 
 is distinguishable from the instant case because of the obvious difference in policy language. In the
 
 Merrill Case
 
 the insured worked on a part-time basis for a while after the accident. The opinion states, “Total disability did not occur until
 
 *549
 
 October 20, 1893, about two months after the accident.”
 
 [7]
 
 Because the court construed the policy as requiring total disability to occur immediately after the happening of the accident, the insured was held not entitled to recover policy benefits. There apparently was no showing that the insured was not able to perform his work during the period he worked part time.
 

 There is an abundance of authority from other jurisdictions that a return to work does not prevent as a matter of law an insured from establishing that he is totally disabled within the meaning of the policy.
 
 [8]
 
 In an annotation in 1 A. L. R. (2d) 756, which is confined to loss or impairment of vision within the meaning of total-disability clauses in insurance policies, reference is made to the cases which have considered the factor of the insured doing some work after the inception of disability, and the author states:
 

 “It appears from these cases that the mere fact that the insured tried to do, or has done for a limited period, or at irregular intervals, some work, either in his usual occupation or in some other occupation, does not preclude the existence of such total disability . ...”
 
 [9]
 

 An individual may return to his former employment and continue in it for a limited time under a number of varying circumstances. He may be prompted to try working again in order to find out whether he is capable of performing the
 
 *550
 
 duties incident to such employment. The employer may allow him to continue at such employment and draw his salary or wages under circumstances where the compensation is largely a gratuity. Fellow employees or subordinates may help him perform some of the duties of the job where without their assistance he would be incapable of carrying on. Under such circumstances to adopt an arbitrary rule that any return to work for a period beyond that of a few days and receiving compensation therefor, conclusively establishes that the insured is not totally disabled, might work grave injustice. We reject adopting such a rule. The return to work and drawing of compensation is a factor to be considered by the trier of fact along with other evidence in determining the issue of total disability.
 

 Is Plaintiff Totally Disabled Within Meaning of Policy?
 

 It is defendant’s position that, in spite of the jury’s finding that plaintiff has been continuously and completely unable to engage in gainful occupations for which he is reasonably fitted by education, training, and experience since his accident of October 23, 1959, the evidence does not sustain this finding.
 

 In interpreting the total-disability provisions and definitions in insurance policies the tendency of many courts has been toward a liberal rather than a strict interpretation. The annotation entitled, “When insured deemed to be totally and continuously disabled or unable to transact all business duties,” 98 A. L. R. 788, 789, states:
 

 “The liberal rule, as shown in the earlier annotations, is that the ‘total disability’ contemplated by an accident policy, or the disability clause of a life policy, does not mean, as its literal construction would require, a state of absolute helplessness ; rather, that the disability contemplated means inability
 
 *551
 
 to do all the substantial and material acts necessary to the prosecution of the insured’s, or, in many instances, any, business or occupation, in a customary and usual manner.”
 
 [10]
 

 Total disability is a relative concept. What may totally disable a manual laborer may not totally disable a business executive, physician, or lawyer within the scope of a total-disability clause of an insurance policy. This is particularly true where the policy employs qualifying language equivalent to that of the instant policy which limits the occupations the insured is disabled from engaging in to those for which he is “reasonably fitted by education, training and experience.”
 

 Plaintiff was born and raised on a dairy farm and was forty-one at the time of the accident. He is a high-school graduate who has never attended a college, university, or trade school. After graduation from high school he remained on the farm for six years, then, except for one year in the army, worked at a filling station for nine years. He then obtained a union permit to do ironwork and was engaged in that work until the time of his accident. His employment as an ironworker required him to do welding, cutting and burning of iron, setting and connecting steel columns, setting riggings, climbing ladders and doing much work above ground level which demanded the full use of both hands and arms.
 

 Defendant claims that plaintiff’s employment for ten months after the accident at his former job clearly demonstrates that he could perform the duties of such employment.
 

 
 *552
 
 But the evidence refutes defendant’s argument. Important testimony was given by Ellsworth Swenson, plaintiff’s supervisor at the Tomaro Construction Company, both before the accident, and for the ten months of plaintiff’s employment following the accident. Mr. Swenson testified that plaintiff was a good worker before the accident, but that after the accident he was unable to perform the necessary duties of his job. The following is an excerpt from Mr. Swenson’s testimony:
 

 “A.
 
 Well there was many phases of the work that he couldn’t do after the accident. He couldn’t climb columns. It was almost impossible actually to crawl ladders and hang on and weld any type of work. He almost had to work on the ground itself or do errands, which we needed done on the ground at the time; other than that there wasn’t much he could do.
 

 “Q.
 
 Is it a substantial part of the performance of an iron worker’s job that he should be able to work above ground level?
 
 A.
 
 You have to work all phases of it because at different times of the day or hour, in fact you have to either climb columns, ladders, and in order to weld or connect iron you have to be able to do everything at all times or you’re of no value to the company that you work for ... .
 

 “Q.
 
 In your opinion as an iron worker for many years and from your observation of Mr. Harker after his accident, was he able to substantially perform the duties of an iron worker on the job under your supervision after his accident?
 
 A.
 
 No.”
 

 Defendant also claims that plaintiff’s three months of employment as a plant mechanic for St. Mary’s Hospital indicates he was not totally disabled. Again there is evidence that refutes defendant’s argument. The testimony of Marvin Statz, plant superintendent at the hospital, indicates that plaintiff was totally disabled. Statz testified that plaintiff’s duties were general repair and maintenance, which “could include everything from changing a light bulb to repairing a radiator or steam plumbing.” Mr. Statz testified as follows:
 

 
 *553
 

 “Q.
 
 Did you have an opportunity to observe Mr. Harker from time to time in the scope of his employment?
 
 A.
 
 Yes.
 

 “Q.
 
 Was he able to substantially perform the duties of his job?
 
 A.
 
 No.”
 

 Plaintiff’s employment as a salesman was clearly a failure as indicated by his minute income and being fired because he was unable to sell.
 

 Plaintiffs background indicates that before the accident his life’s work had been one form or another of manual labor. He had never known any other type of work. There is ample evidence that the injury he has sustained now prevents him from engaging in manual-labor occupations for which he is reasonably fitted by education, training, and experience.
 

 The foregoing resumé of evidence, together with that set forth in the initial statement-of-facts portion of this opinion, provides support for the jury’s finding of total disability.
 
 [11]
 

 Failing to Instruct with Respect to Partial Disability.
 

 Defendant requested an instruction to the jury setting forth the policy definition of partial disability. The trial court refused to give the instruction. The requested instruction is predicated on the premise that the partial-disability and total-disability definitions of the policy are mutually exclusive and that if plaintiff qualifies under the partial-disability definition he is thereby excluded from qualifying for total-disability benefits.
 

 The two definitions, if literally interpreted, are not necessarily mutually exclusive. The definition of partial disability is phrased in terms of a particular occupation while
 
 *554
 
 that of total disability includes any occupation for which the insured is reasonably fitted by education, training, and experience. Therefore, if accorded their literal interpretation, it is possible that a disability which prevents the insured from performing one or more of the important regular duties of business or occupation followed by him at the time of incurring disability might also disable him from engaging in any gainful occupation for which he was fitted by education, training, and experience. In such a situation an ambiguity would exist as to which of the two types of benefit payments the insured would be entitled. This would make applicable the often-invoked rule of construction that in case of ambiguity the policy should be construed against the insurance company which drafted it and the insured would be entitled to benefits for total disability rather than for partial disability.
 

 Therefore, implicit in the definition of partial disability is the requirement that the disability be not so disabling in nature as to qualify the insured to benefits for total disability. Under this interpretation of the policy definition of partial disability an instruction which contained such definition would be irrelevant to the issues being litigated. Whether plaintiffs disability would also qualify as partial disability under the definition of the latter would be wholly immaterial. Plaintiff has made no claim to partial-disability benefits but seeks solely to recover benefits for total disability.
 

 Failure to Include Welding as One of Occupations Plaintiff Had Pursued.
 

 Defendant also complains of the instructions because of their omission of plaintiffs former occupation of welder. In instructing the jury as to plaintiff’s former occupations, the trial court stated:
 

 
 *555
 
 “You are instructed that, in order for you to determine that Robert J. Harker is completely unable to engage in gainful occupations for which he is reasonably fitted by education, training, and experience, you must not only be satisfied by the greater weight of the credible evidence that he is completely unable to engage in farming, mechanics, or iron or steel work, which are the occupations in which he had actually worked and had some training and experience prior to his injury; . . .”
 

 In light of the testimony at the trial that plaintiff did welding and burning in connection with ironwork, it hardly appears to be error for the trial court merely to fail to be more specific in his description of ironwork. We believe that the jury would have no difficulty in recalling that welding and burning were involved in plaintiff’s ironwork. Even if this omission is erroneous, we consider it highly improbable a different result would have followed if the error had not been made in view of the testimony that plaintiff after the accident required the assistance of fellow workmen in order to do welding.
 

 By the Court.
 
 — Judgment affirmed.
 

 Wilkie, J., took no part.
 

 [1]
 

 (1959), 7 Wis. (2d) 255, 96 N. W. (2d) 509, 97 N. W. (2d) 392.
 

 [2]
 

 (D. C. Wis. 1962), 209 Fed. Supp. 479.
 

 [3]
 

 Supra,
 
 footnote 1, at page 257.
 

 [4]
 

 Id. at page 480.
 

 [5]
 

 (1886), 67 Wis. 174, 30 N. W. 237.
 

 [6]
 

 (1895), 91 Wis. 329, 64 N. W. 1039.
 

 [7]
 

 Id. at page 334.
 

 [8]
 

 Mutual Benefit Health & Accident Asso. v. Bird
 
 (1932), 185 Ark. 445, 47 S. W. (2d) 812;
 
 Joyce v. United Ins. Co.
 
 (1962), 202 Cal. App. (2d) 654, 21 Cal. Rptr. 361;
 
 Besh v. Mutual Benefit Health & Accident Asso.
 
 (1943), 304 Mich. 343, 8 N. W. (2d) 91;
 
 Weum v. Mutual Benefit Health & Accident Asso.
 
 (1952), 237 Minn. 89, 54 N. W. (2d) 20;
 
 Dittmar v. Continental Casualty Co.
 
 (1959), 29 N. J. 532, 150 Atl. (2d) 666;
 
 Thompson v. Aetna Life Ins. Co.
 
 (1935), 177 S. C. 120, 180 S. E. 880;
 
 Continental Casualty Co. v. Carlisle
 
 (Tex. Civ. App. 1965), 391 S. W. (2d) 98.
 

 [9]
 

 1 A. L. R. (2d) at pp. 781, 782. See also 29A Am. Jur., Insurance, p. 634, sec. 1528.
 

 [10]
 

 The following cases are all in accord:
 
 Mutual Benefit Health & Accident Asso. v. Bird
 
 (1932), 185 Ark. 445, 47 S. W. (2d) 812;
 
 Joyce v. United Ins. Co.
 
 (1962), 202 Cal. App. (2d) 654, 21 Cal. Rptr. 361;
 
 Dennis v. Business Men’s Assurance Co. of America
 
 (La. 1965), 175 So. (2d) 431;
 
 Crowe v. Equitable Life Assurance Society
 
 (1934), 179 La. 444, 154 So. 52;
 
 Buis v. Prudential Ins. Co. of America
 
 (1934), 229 Mo. App. 190, 77 S. W. (2d) 127;
 
 Dittmar v. Continental Casualty Co.
 
 (1959), 29 N. J. 532, 150 Atl. (2d) 666.
 

 [11]
 

 Cases with comparable fact situations in which total disability was found are:
 
 Dennis v. Business Men’s Assurance Co. of America
 
 (La. 1965), 175 So. (2d) 431;
 
 Thompson v. Aetna Life Ins. Co.
 
 (1935), 177 S. C. 120, 180 S. E. 880;
 
 Continental Casualty Co. v. Carlisle
 
 (Tex. Civ. App. 1965), 391 S. W. (2d) 98.