**Michael C. McVEIGH, Plaintiff,**

v.

**UNUMPROVIDENT CORPORATION and Provident Life & Accident Insurance Company, Defendants.**

No. 01–C–0679–C.

United States District Court, W.D. Wisconsin.

Aug. 9, 2002.

Lawrence Bensky, for Plaintiff.

Paul E. Benson, Michael Best & Freidrich, LLP, Milwaukee, WI, for Defendants.

## ORDER AND OPINION

CRABB, District Judge.

This is a civil action for monetary, declaratory and injunctive relief in which plaintiff Michael C. McVeigh is suing defendants UnumProvident Corporation and Provident Life & Accident Insurance Company for denying him disability benefits under the disability income policy he purchased from defendant Provident Life. Diversity jurisdiction was alleged. Initially, however, there was a question whether

such jurisdiction existed. Defendant UnumProvident alleged that it was a Delaware corporation with "one" of its principal places of business in Portland, Maine, and defendant Provident Life stated only that it was "domiciled" in Tennessee. To clarify the question of citizenship, I ordered defendants to provide this court with their principal places of business and places of incorporation. On August 7, 2002, defendant UnumProvident declared that it is a Delaware corporation with its principal place of business in Chattanooga, Tennessee, and defendant Provident Life declared that it is a Tennessee corporation with its principal place of business in Chattanooga, Tennessee. Plaintiff is a citizen of Ohio. Therefore, diversity jurisdiction exists. *See* 28 U.S.C. § 1332.

Presently before the court is defendants' motion for summary judgment and plaintiff's motion for leave to file a surreply brief. Because defendants argued in their reply brief that plaintiff would be ineligible for residual disability benefits unless he was working and plaintiff has never had an opportunity to be heard on this condition of eligibility, I will allow plaintiff to file a surreply brief. Because I find that plaintiff filed a disability claim for both residual and total disability benefits and that defendants denied plaintiff's claim for residual disability benefits in bad faith and there exists a question whether plaintiff may be able to prove that he is totally disabled, I will deny defendants' motion for summary judgment as to plaintiff's claims for residual disability benefits, total disability benefits and bad faith. Because I find that plaintiff is residually disabled and that defendants denied plaintiff's claim for residual disability benefits in bad faith, I will grant summary judgment in favor of plaintiff as to these issues on the court's own motion. It will be up to the factfinder to decide the extent of plaintiff's disability and, if it finds that plaintiff is totally disabled, whether defendants acted in bad

faith in denying his application for total disability benefits. Last, because plaintiff failed to adduce sufficient evidence to establish defendant UnumProvident's complete domination over defendant Provident Life's finances, policy and business practices, plaintiff cannot pierce the corporate veil. As a result, I will grant defendants' motion for summary judgment as to defendant UnumProvident only and it will be dismissed.

From the proposed findings of fact and the record, and for the sole purpose of deciding defendant's motions for summary judgment, I find that no genuine issue exists with respect to the following material facts.

## UNDISPUTED FACTS

### A. *Parties and Background*

Plaintiff is a physician and a citizen of Beavercreek, Ohio. Defendant UnumProvident is a Delaware corporation with its principal place of business in Chattanooga, Tennessee. Defendant Provident Life & Accident Insurance Company is a Tennessee corporation with its principal place of business in Chattanooga, Tennessee.

Since 1986, plaintiff has been licensed to practice medicine by the state of Wisconsin. From July 1997 until August 2001, plaintiff held the positions of chief of the radiology service at the Department of Veterans Affairs Medical Center in Dayton, Ohio, and director and associate professor of radiology sciences at Wright State University School of Medicine. He was a full-time employee at the Veterans Affairs Medical Center and taught medical students and residents at Wright State University. By agreement, plaintiff's salary was paid by both entities.

### B. *The Policy*

In May 1993, plaintiff entered into a contract for a disability income insurance

policy with defendant Provident Life. Plaintiff contracted for benefits in the event of either total or residual disability. Total disability is defined as:

Total Disability or totally disabled means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

Occupation is defined as:

[Y]our occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized speciality within the scope of your degree and license, we will deem your speciality to be your occupation.

Residual disability is defined as:

Residual disability or residually disabled, during the Elimination Period, means that due to Injuries or Sickness:

1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;

2. you have a Loss of Monthly Income in your occupation of at least 20%; and

3. you are receiving care by a Physician which is appropriate for the condition causing disability. We will waive this requirement when continued care would be of no benefit to you.

Loss of Monthly Income is defined as:

Loss of Monthly Income means the difference between Prior Monthly Income and Current Monthly Income ... The amount of the loss must be at least 20% of Prior Monthly Income to be deemed Loss of Monthly Income. If your loss is more than 75% of Prior Monthly Income, we will deem the loss to be 100%.

## C. · Claim for Benefits

In the spring or early summer of 2000, plaintiff began experiencing painful headaches, which increased in severity and frequency over the next several months. From December 2000 until June 2001, plaintiff was examined by four different physicians who evaluated his condition. Plaintiff's primary care physician, Dr. Rudy J. Bohnic, an internist, prescribed plaintiff Zomig but it provided only temporary relief. Dr. Bohnic also ordered an MRI, which showed no abnormalities. Following the MRI, Dr. Bohnic referred plaintiff to a neurologist, Dr. Donald Wamsley, for further evaluation.

On November 29, 2000, plaintiff received a memorandum from Dr. Edward Sperber, chief of staff of the Veterans Affairs Medical Center, ordering plaintiff to stop performing all administrative duties and to continue performing clinical duties only. Dr. Sperber directed plaintiff to cease his administrative duties because plaintiff was concerned about violence in his workplace. On January 4, 2001, Dr. Sperber sent plaintiff another memorandum in which he ordered plaintiff to discontinue his duties related to nuclear medicine because concerns had been raised regarding plaintiff's recent interpretations of nuclear medicine cases.

Dr. Wamsley examined plaintiff in both January and February 2001. After each of these examinations, Dr. Wamsley sent a letter report to Dr. Bohnic. On January 9, 2001, Dr. Wamsley stated to Dr. Bohnic that "[w]e discussed at further length that [plaintiff] is concerned about his job, because he feels that the lights are a precipitating factor. I would agree with this, and this may require him to change occu-

pations, but hopefully we can control these with Depakote and Amerge." On February 9, 2001, Wamsley referred to plaintiff's condition as "migraine headaches" and concluded that they are an occupational problem that "disable him and make him unable to work."

In February 2001, plaintiff filed a claim requesting "disability benefits" from defendants. The claim form did not require plaintiff to specify whether he was requesting total or residual benefits. Plaintiff included an attending physician's statement, Dr. Wamsley's letters to Dr. Bohnic and Dr. Edward Sperber's January 4, 2001 memorandum.

The disability claim form asked plaintiff to "[l]ist the duties of your occupation at the time of your disability" and state the "number of weekly hours spent at [each] duty." Plaintiff listed four duties with corresponding hours as follows: (1) "Interpretation and performance of radiology procedures: 34"; (2) "Interpretation and performance of nuclear procedures: 8"; (3) "Teaching of medical students, residents: Included in above"; and (4) "Administrative: 0."

The disability claim form asked plaintiff to "describe in order of priority the important duties of the specific occupation(s) you were engaged in on a full-time basis at the time disability commenced." Plaintiff listed the following duties in order: (1) "Interpretation and performance of Diagnostic Radiology Procedures"; (2) "Interpretation and performance of Nuclear Medicine Procedures"; (3) "Teaching of medical students, residents"; and (4) "Administrative." The form asked, "[w]hat important duties are you now able to perform and as of what date were you able to perform them?" Plaintiff answered, "Teaching and Administrative—have performed continuously." At the time plaintiff filed his disability claim, he was not performing any administrative duties at

the Veterans Affairs Medical Center and he "may have been performing very few administrative duties at Wright State University." Plaintiff taught about two or three times in February 2001.

On April 20, 2001, defendants' customer care specialist, Erin White, wrote plaintiff a preliminary review letter that states as follows:

> Based on this preliminary review, there is no information currently contained in your claim file to support the restrictions and limitations which prevent you from performing the material and substantial duties of your occupation on a full-time basis. When I stated that we would obtain more current medical records from your providers, you indicated that the medical information submitted with your initial claim information was all of the medical information available. Therefore, no additional medical records have been requested. If there are additional records to be obtained, please let me know immediately and we will request them.
>
> In order to gain a better understanding of your medical condition, we have requested that a Genex nurse representative meet with your attending physician to discuss your condition. We will advise you of the results of this meeting when it is completed.

(It is unclear which defendant employs White because in her correspondence to plaintiff the name "Provident Life" appears under her signature but the letters are written on "Unum Provident Corporation" letterhead.)

On May 31, 2001, defendants denied plaintiff's claim for disability benefits. The denial letter, which was written by White on UnumProvident letterhead with Provident Life under her signature, states as follows:

This letter is in regard to your claim for total disability benefits ... Our Medical Department has recently had the opportunity to review your claim file. The review states that "This is all self-reported and claimed impairment is out of proportion to any medical factors documented in the file." The review also states that "Tension headaches are usually controllable and his should have been by now. It is rarely necessary for people to leave work for even a brief time, to get these controlled. He is not receiving any treatment, so it is unlikely his condition will change in the foreseeable future."

According to the information contained in your claim file, it appears that you do not currently have restrictions and limitations which prevent you from performing the material and substantial duties of your occupation.

On June 4, 2001, Dr. Thomas Mathews, chief of neurology at the Veterans Affairs Medical Center, examined plaintiff as part of a fitness for duty examination ordered by the Department of Veterans Affairs. Dr. Mathews prepared neurological consultation results on the basis of this examination.

On June 9, 2001, plaintiff appealed the denial of benefits. In support of his appeal, plaintiff submitted the June 4, 2001 neurological results prepared by Dr. Mathews.

On June 18, 2001, defendants denied plaintiff's appeal. The denial letter, which was written by White on UnumProvident Corporation letterhead with Provident Life under her signature, states as follows:

Our Medical Department has concluded that "HAs (headaches) were related to stress and atypical for migraines. None the less they were labeled migraines without aura and were said to be triggered by view box use. Conclusion was that he should not RTW (return to

work) as a radiologist. Neuro exam was WNL (within normal limits) and no testing or treatment was suggested." In conclusion, the Medical Department has opined that "These HAs (headaches) fit best with a mechanism of tension headaches and not migraines and as such should not be triggered by bright lights, but rather by stress." ... We have forwarded your claim file to our Quality Review Department.

On July 13, 2001, defendants' quality review department denied plaintiff's claim after a final review of his appeal. The denial letter, which was written on Unum-Provident Corporation letterhead, provided a summary of defendants' review of plaintiff's claim. The letter began with the policy's definition of total disability and stated that because the denial of benefits was supported factually and contractually, defendants would uphold the denial. (It is unclear which defendant was upholding the appeal. The letter was signed by Holley Harwell at "Provident Life" but was written on "UnumProvident Corporation" letterhead.)

On July 25, 2001, the U.S. Office of Personnel Management of the federal employees retirement system approved plaintiff's application for federal disability retirement benefits. On August 1, 2001, plaintiff "separated from the federal government" for disability retirement. (It is unclear whether plaintiff also separated from the Veterans Affairs Medical Center or Wright State University on August 1, 2001.)

## OPINION

### A. *Claim for Disability Benefits*

Defendants argue that they should be granted summary judgment because plaintiff requested only "total disability" benefits in both his disability claim and his

complaint in this lawsuit. However, nowhere in the disability claim form did plaintiff specify that he was requesting only "total" disability benefits. Plaintiff requested "disability benefits" and the disability claim form was generically titled "disability claim." Moreover, the claim form contained numerous detailed questions, but there is not one instance in which plaintiff was directed to specify whether he was requesting either "residual" or "total" benefits.

██ Defendants argue that because plaintiff failed to request "residual" benefits specifically, he has applied for total benefits only. This is not a convincing argument under the circumstances. It is undisputed that plaintiff's policy provides both total and residual benefits. An insured whose policy provides for multiple types of benefits should reasonably expect that once he has filed a generic claim for benefits and has completed the form, the insurance provider will provide *any* benefits to which the individual is entitled. This is especially true when a claimant is not required to specify the type of benefits sought. Simply put, it is unreasonable for defendants to contend that plaintiff limited his application to "total" benefits when he applied generically for "disability benefits."

In addition, plaintiff did not allege in his complaint that he was seeking only total disability benefits. In fact, he referred continually to his claim for "disability benefits," not "total disability benefits." Specifically, plaintiff's complaint asserts that defendants breached the policy (1) "by denying [plaintiff's] claim for *benefits*"; (2) because "[plaintiff] has not received past [p]olicy *benefits*"; and (3) by failing to pay "all past Policy *benefits*." Plt.'s Cpt., dkt # 2, ¶¶ 30–32 (emphasis added).

Defendants cite one paragraph in plaintiff's complaint as evidence that plaintiff is seeking only total disability benefits. The cited paragraph is part of plaintiff's claim for declaratory judgment. In this paragraph, plaintiff does not make a claim for total disability benefits only, he merely states that "there is a substantial controversy between [defendants and plaintiff] about whether plaintiff is 'totally disabled' under the terms of the [p]olicy." *Id.* at ¶ 25.

Moreover, defendants cannot rely on plaintiff's complaint as evidence that plaintiff sought total disability benefits only. Defendants mention that "[n]otably, neither the word 'residual' nor the phrase 'residual disability benefits' appear anywhere in [p]laintiff's [c]omplaint." Dfts.' Reply, dkt # 30, at 10. Plaintiff is not required to include such language in his complaint. The issue in this case is whether defendants breached their contract by denying plaintiff benefits after he filed a claim under the policy. Only the policy and the disability claim will reveal whether there was a breach of contract. Defendants cannot plausibly cite one paragraph in plaintiff's complaint, written months after he filed for disability benefits, as a basis for asserting that plaintiff sought only total disability benefits.

### B. *Residual Disability Benefits*

Defendants' sole argument that plaintiff is not entitled to residual benefits is that he is not working. The obvious flaw in their logic is that the policy does not require that the insured be working in order to collect residual benefits.

██ It is well established that terms in an insurance policy are ambiguous if they are fairly susceptible to more than one reasonable interpretation when read in context. *Peace v. Northwestern Nat'l Ins. Co.*, 228 Wis.2d at 154, 596 N.W.2d at 450 (1999). Whether an ambiguity exists in an exclusion from coverage depends on the meaning that the words used to describe the exclusion would have to a reasonable

person of ordinary intelligence in the position of the insured. *Kozak v. United States Fidelity & Guaranty Co.,* 120 Wis.2d 462, 467, 355 N.W.2d 362, 364 (Ct. App.1984). However, this principle does not allow a court to eviscerate an exclusion that is clear from the face of the insurance policy. *Whirlpool Corp. v. Ziebert,* 197 Wis.2d 144, 152, 539 N.W.2d 883, 886 (1995).

■ The policy states that in order to be eligible for residual disability benefits, an insured must have a "Loss of Monthly Income in your occupation of at least 20%." Contrary to defendants' argument, this phrase does not mean that the insured must be working to be eligible for residual disability benefits. The phrase simply means that *if* the insured were working, he would have to have at least a 20% loss in monthly income to be eligible for residual benefits. The language is not ambiguous. Its plain and ordinary meaning is not that an insured must be working to collect residual disability benefits. *See Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis.2d 722, 735, 351 N.W.2d 156, 163 (Wis.1984) (holding that language of insurance policy should be interpreted according to its plain and ordinary meaning as understood by reasonable person in position of insured). Even if the policy were ambiguous, it still would be construed in favor of coverage. *See Smith v. Atlantic Mutual Ins. Co.,* 155 Wis.2d 808, 811, 456 N.W.2d 597, 598 (Wis.1990) (holding that if coverage is ambiguous, policy is construed in favor of coverage and exclusions are construed narrowly against insurer).

■ Defendants' argument against awarding residual benefits hinges solely on their contention that the policy requires plaintiff to be working in order to collect residual benefits. It is undisputed that plaintiff cannot perform radiology and nuclear medicine procedures, which are two "important" job duties that defendants

concede are material and substantial. By making no other argument against denying residual benefits, defendants have conceded in essence that plaintiff is residually disabled. Therefore, I find that plaintiff is entitled to residual disability benefits. The degree of residual disability is a question for the factfinder. *See Harker v. Paul Revere Life Ins. Co.,* 28 Wis.2d 537, 547, 137 N.W.2d 395, 400 (1965) (holding that question of claimant's total or residual disability is question for factfinder); *see also Lewis v. The Paul Revere Life Ins. Co.,* 80 F.Supp.2d 978, 988 (E.D.Wis.2000). Although plaintiff is residually disabled, it is for the factfinder to determine the number of substantial and material duties that plaintiff can still perform. Once that determination has been made, plaintiff's residual disability benefits will be calculated according to the policy's loss of monthly income formula.

### C. *Total Disability Benefits*

■ Plaintiff argues that he is not only residually disabled but totally disabled. Plaintiff may be entitled to total disability benefits if the factfinder concludes one of three things. First, according to the policy, if the factfinder concludes that plaintiff is no longer able to perform the substantial and material duties of his occupation, he will be deemed totally disabled. Second, under *Harker,* 28 Wis.2d 537, 137 N.W.2d 395, a reasonable jury can find that even if plaintiff were still teaching and performing administrative duties (even if these duties are substantial and material), he may still be entitled to total disability benefits if he is unable "to do all the substantial and material acts necessary to the prosecution of [his] ... occupation, in a customary and usual manner." *Id.* at 546–48, 137 N.W.2d at 400–401 (citing 98 A.L.R. 788, 789). Third, the policy states that if plaintiff's loss of monthly income is more than 75% of his prior monthly in-

come, his loss will be deemed 100%. Therefore, if the factfinder determines plaintiff's loss of monthly income to be greater than 75%, defendants will be required to pay as if plaintiff is totally disabled.

## C. Bad Faith

Defendants argue that because plaintiff's breach of contract claim fails as a matter of law, plaintiff's bad faith claim fails as well. However, I have concluded that defendants breached their disability contract as to residual benefits.

 To prevail on a claim of bad faith in the insurance context, an insured must establish that (1) there was no reasonable basis for denying the claim under an objective standard and (2) the insurer acted with knowledge or reckless disregard for the lack of a reasonable basis. *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 692, 271 N.W.2d 368, 377 (1978). In determining whether there is evidence of a reasonable basis for denying a claim, it is relevant to examine whether a claim was investigated appropriately and whether the results of the investigation were evaluated and reviewed reasonably. *Id.* If an insured's claim is "fairly debatable" either in fact or law, an insurer cannot be said to have denied the claim in bad faith. *Id.* at 691, 271 N.W.2d at 377.

 Defendants acted in bad faith by unreasonably claiming that plaintiff must be working in order to qualify for residual disability benefits. Because nothing in the terms of the contract imposes such a requirement, defendants cannot contend that it is fairly debatable whether plaintiff must be working. Therefore, there was no reasonable basis for defendants to deny plaintiff's claim under an objective standard. Defendants cite *Falik v. Penn Mutual Life Ins. Co.*, 204 F.Supp.2d 1155 (E.D.Wis. 2002), as support for their position but in that case, the insurance policy stated spe-cifically that an insured must be working in order to be entitled to residual disability benefits. *Id.* at 1160. The contract stated that "[y]ou will be considered residually disabled if all these conditions are met: [y]ou are able to do some but not all of the substantial and material duties of your regular occupation ... *[y]ou are working,* and your earnings during a month do not exceed 80% of your pre-disability earnings ..." *Id.* (emphasis added). As discussed earlier, the requirement in defendants' policy that an insured must have a loss of monthly income in his or her occupation of at least 20% cannot be construed to mean that the insured must be working to qualify for benefits.

At a minimum, defendants recklessly denied plaintiff's claim for residual disability benefits without a reasonable basis. After plaintiff filed a claim for disability benefits, defendants ignored plaintiff's possible entitlement to residual disability benefits. It is undisputed that plaintiff cannot perform at least two important duties of his job, radiology and nuclear medicine procedures. Therefore, defendants should have found plaintiff residually disabled. Defendants never explained to plaintiff why he was denied residual disability benefits. Only after plaintiff filed suit did defendants offer the weak argument that plaintiff must be working to collect residual disability benefits. Accordingly, I conclude that defendants denied plaintiff's residual disability claim in bad faith.

 The question whether defendants acted in bad faith by denying plaintiff total disability benefits will have to be resolved by a jury. The first element of bad faith, whether there was a reasonable basis for denying the claim under an objective standard, cannot be resolved unless the jury decides that plaintiff is entitled to total disability benefits. The jury will then consider whether plaintiff's claim for total dis-

ability benefits was fairly debatable. *See Danner v. Auto–Owners Ins.*, 245 Wis.2d 49, 78–79, 629 N.W.2d 159, 174–75 (Wis. 2001) (finding it was not fairly debatable when defendant insurer based its denial solely on opinion of defendant's physician which conflicted with that of plaintiff's three physicians).

### D. *Defendant UnumProvident*

Defendant UnumProvident contends that because it is only a holding company, it is inappropriate to pierce the corporate veil and summary judgment should be granted in its favor. To prevail on a motion for summary judgment, the moving party must show that even when all inferences are drawn in the light most favorable to the non-moving party, there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *McGann v. Northeast Illinois Regional Commuter Railroad Corp.*, 8 F.3d 1174, 1178 (7th Cir.1993). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The opposing party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. *Id.* at 322, 106 S.Ct. 2548.

The burden of proof is on the party seeking to pierce the corporate veil. *See National Soffit v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir.1996). The decision to pierce the corporate veil is a highly fact sensitive inquiry. *Id.* The "legal fiction" that grants a corporation a separate identity from its shareholders is one not to be lightly disregarded. *Consumer's Co-op. of Walworth County v. Olsen*, 142 Wis.2d 465, 474, 419 N.W.2d 211, 213 (1988) (citing *Milwaukee Toy Co. v. Industrial Comm'n of Wisconsin*, 203 Wis. 493, 495, 234 N.W. 748 (1931)). Nonetheless, the corporate form should be disregarded "if corporate affairs are organized, controlled and conducted so that the corporation has no separate existence of its own and is the mere instrumentality of the shareholder and the corporate form is used to evade an obligation, to gain an unjust advantage or to commit an injustice." *Id.* at 142 Wis.2d at 476, 419 N.W.2d at 214–15 (citing *Wiebke v. Richardson*, 83 Wis.2d 359, 363, 265 N.W.2d 571 (1978)).

The Wisconsin Supreme Court has adopted an "instrumentality" or "alter ego" test that allows piercing when the following three elements are proven:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Consumer's Co-op.*, 142 Wis.2d at 484, 419 N.W.2d at 217–18.

■ Plaintiff fails to satisfy the first prong of this test because he did not adduce sufficient evidence of defendant UnumProvident's complete domination over defendant Provident Life's finances, policy and business practices. Plaintiff cites defendant UnumProvident's website as proof of its financial domination over defendant Provident Life. Plaintiff asserts that on its website, defendant UnumProvident holds itself out to be a company integrated with defendant Provident Life. The website may illustrate a strong link between the two defendants but it reveals no evidence that defendant UnumProvident completely controls defendant Provident Life's finances, policy and business practices. Plaintiff refers to the ubiquitous use of the name "UnumProvident" in written correspondence and phone calls associated with plaintiff's claim to illustrate defendant UnumProvident's control. This evidence is relevant, but not sufficient to show complete control.

Courts agree that complete stock ownership and even substantial overlap of officers and directors between a parent and its subsidiary are insufficient to establish that one is the mere instrumentality of the other. *See Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 161 (7th Cir. 1963). Other features of the organization and operation of its subsidiary are necessary to establish that the subsidiary is the mere instrument or "alter ego" of the parent. *Id.* In *Roscoe Turner*, the Court of Appeals for the Seventh Circuit identified at least ten factors generally considered by courts to determine whether complete control exists. *Id.* Plaintiff has provided sufficient evidence that defendant Provident Life is a division of defendant UnumProvi-

dent and that defendant UnumProvident exerts some influence on Provident Life's business. This evidence meets only one of the factors identified in *Roscoe Turner*.

Plaintiff fails to cite evidence, other than the website, to illustrate defendant UnumProvident's financial control. For example, there is no evidence that defendant Provident Life is inadequately capitalized or that defendant UnumProvident fails to observe corporate formalities. *See Consumer's Co-op.*, 142 Wis.2d at 483, 419 N.W.2d at 217; *Roscoe Turner*, 324 F.2d at 161. Moreover, there is no evidence that defendant Provident Life's only business is with defendant UnumProvident or that defendant Provident Life has no assets except those conveyed by defendant UnumProvident. *See Roscoe Turner*, 324 F.2d at 161.

Plaintiff cites *Simon v. Unumprovident Corp.*, No. 99–6638, 2002 WL 1060832 (E.D.Pa. May 23, 2002) to support his position that the corporate veil should be pierced. In *Simon*, the plaintiff sued Paul Revere Life Insurance, another subsidiary of defendant UnumProvident. (At the time the complaint for *Simon* was filed, Provident Corporation had not yet merged with Unum Corporation to become UnumProvident.) In *Simon*, the court stated:

Plaintiff has presented evidence that . . . [Unum]Provident considered Paul Revere's income its own, . . . [Unum]Provident issued checks to insureds on behalf of Paul Revere . . . and [Unum]Provident treated Paul Revere's personnel as its own . . . Moreover, the Worcester claims office . . . did not distinguish in its monthly reporting between [Unum]Provident claims and Paul Revere claims.

*Id.* at 4. Plaintiff has not presented evidence similar to that presented in *Simon*. For example, plaintiff has offered no evidence regarding the source of defen-

dants' income, the status of defendants' employees or the content of defendants' financial or business reports. Inferences of financial control cannot be drawn from the information contained on defendant UnumProvident's website. If evidence regarding defendant UnumProvident's financial control exists, plaintiff had to offer this evidence to establish that there is a genuine issue of material fact. The facts leave no doubt that plaintiff has failed to make the requisite showing of defendant Unum Provident's control over defendant Provident Life. Accordingly, I will grant defendants' motion for summary judgment on this issue.

## ORDER

IT IS ORDERED that

1. Plaintiff Michael C. McVeigh is GRANTED to file a surreply brief;

2. The motion for summary judgment of defendants UnumProvident Corporation and Provident Life & Accident Insurance Company is DENIED in part and GRANTED in part: (a) DENIED as to plaintiff's claims for total disability benefits, residual disability benefits and bad faith and (b) GRANTED as to plaintiff's attempt to pierce the corporate veil;

3. On the court's own motion, summary judgment is GRANTED in plaintiff's favor as to his claims for (a) residual disability benefits and (b) bad faith relative to the denial of residual disability benefits only; and

4. The complaint against defendant UnumProvident is DISMISSED.