David J. PETERSON, Plaintiff-Appellant,†

v.

PENNSYLVANIA LIFE INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 02–0912. Submitted on briefs October 11, 2002.—Decided June 5, 2003.*

2003 WI App 166

(Also reported in 669 N.W.2d 151.)

† Petition to review denied 10-1-03.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William F. Bauer* and *Amy F. Scholl* of *Coyne, Niess, Schultz, Becker & Bauer, S.C.*, of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thomas J. Lonzo* of *Cook & Franke S.C.*, of Milwaukee.

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. ROGGENSACK, J. David Peterson appeals the circuit court's judgment that Pennsylvania Life Insurance Company did not breach the terms of its accident benefit policy when it stopped paying Peterson disability benefits. Pennsylvania Life did so because it found that Peterson was not totally disabled, as that term is defined in the policy. Because the policy definition of "totally disabled" unambiguously provides that Peterson is not totally disabled if he is or may reasonably become qualified for any occupation by reason of education, experience or training and because the finding of the circuit court is not clearly erroneous, we affirm the judgment.

## BACKGROUND

¶ 2. Peterson's sole occupation has been as a roofer and rough carpenter.[1] He learned the trade working with his father, a carpenter-contractor, start-

---

[1] A rough carpenter builds the frame of a house and installs windows and doors. Therefore, the occupation term "framer" is often used interchangeably with "rough carpenter."

ing at age eight. Peterson dropped out of school in the eleventh grade and went to work full-time for his father. In 1994, he purchased a Pennsylvania Life accident policy with a disability rider providing coverage for accidents resulting in "total disability."

¶ 3. In April 1996, Peterson fell from the frame of a home and fractured his right heel. The injury was serious and required a bone graft from his hip and a metal joint to repair. Dr. Stuart Stitgen, Peterson's treating orthopedic surgeon, concluded that Peterson had "sustained a permanent partial disability rating of 8%" and estimated a healing plateau of nine months. Dr. Stitgen also concluded that Peterson could no longer work as a roofer or rough carpenter and restricted him from all climbing, working on inclined surfaces, walking on rough or uneven terrain and lifting more than 40 pounds.

¶ 4. Pennsylvania Life made disability payments to Peterson from the date of his injury to June 1999. On July 24, 1999, Pennsylvania Life notified Peterson that it was discontinuing payments because Peterson was not "totally disabled" as defined by the policy. Peterson sued Pennsylvania Life for breach of contract,[2] and a trial to the court was held.

¶ 5. At trial, Peterson testified that since the date of his injury, he has not returned to any type of employment. He explained that he is constantly in pain and that the pain has increased since the date of his

---

[2] The original complaint included three causes of action: (1) breach of contract, (2) bad faith and (3) statutory prejudgment interest under WIS. STAT. § 628.46 (2001–02). However, the parties entered a stipulation that the only issue to be resolved at trial was Peterson's cause of action for breach of contract. Peterson's claim for breach of contract is therefore the only issue on appeal.

injury. He received some counseling from the Wisconsin Department of Vocational Rehabilitation, acquired his GED and enrolled in a math course at Madison Area Technical College. Peterson said he dropped the math course, however, because the pain caused by walking from the parking lot to the classroom and sitting in class for an hour was unbearable. In terms of everyday activity, Peterson lives by himself, drives a vehicle, does his own shopping and laundry, visits with friends and neighbors and spends time with his daughter.

¶ 6. Dr. Stitgen testified that he had last seen Peterson in September 1999 for a "check up" on his heel. Stitgen opined that Peterson could not realistically return to work as a rough carpenter. However, he also opined that Peterson was not 100% disabled and that although he had limitations, he would be able to do a sedentary job with standing limited to approximately thirty minutes per hour. Stitgen also testified that he had not, to his knowledge, prescribed any pain medication to Peterson since May 1996.

¶ 7. Pennsylvania Life retained Dr. Patel, an orthopedic surgeon, to provide an independent examination of Peterson. Patel's findings substantially corroborated those of Stitgen. He also testified that in his opinion, Peterson could perform regular carpentry activities at ground level.

¶ 8. Deborah Peck, a vocation evaluator hired by Pennsylvania Life to perform a vocational rehabilitation review of Peterson, testified that Peterson possessed numerous skills learned from his work as a carpenter that, despite his injury, would qualify him for immediate employment. Those skills included precision measuring, carpentry skills, ability to follow basic blueprints, and knowledge of the general business trade. Peck further opined that because Peterson had been

773

self-employed, he could do estimates for bids on jobs. Peck concluded that based on her survey of the Dane County job market, with Peterson's physical restrictions in mind, there existed jobs available for which Peterson could reasonably apply.

¶ 9. Last, Pennsylvania Life subpoenaed Al Pedracine, a vocational specialist with the Dane County Mental Health Center, to testify. Pedracine had assessed Peterson fifteen months after his accident and completed a report identifying his work-related history and goals. The report included a list of "transferable skills" that Pedracine explained were skills that could be "utilized in a lot of different jobs, not necessarily impacted by the disability." The skills listed in the report were those skills that Peterson identified as ones he had acquired while working as a roofer and rough carpenter. Based on his assessment, Pedracine concluded there were immediate job options available to Peterson including electronics worker, engraver, industrial order clerk and sales representative in a lumberyard. Pedracine also listed numerous employers in Dane County that employed individuals in the four job classifications. Peterson did not explore the job market following the assessment.

¶ 10. The circuit court concluded that the insurance policy's definition of "totally disabled" was unambiguous. It found that although Peterson could no longer perform rough carpentry and roofing, he had many transferable job skills that qualified him for employment in at least four occupational areas. Accordingly, the court concluded that Pennsylvania Life did not breach its contractual obligation to Peterson when it stopped paying disability benefits. Peterson appeals.

## DISCUSSION

**Standard of Review.**

■■

¶ 11. The interpretation of an insurance contract is a question of law that we review without deference to the circuit court. *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689, 691 (1984). Whether an ambiguity exists in an insurance policy is also a question of law. *Kreuser v. Heritage Mut. Ins. Co.*, 158 Wis. 2d 166, 172, 461 N.W.2d 806, 808 (Ct. App. 1990). Additionally, we will not set aside a circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2001–02).

¶ 12. The parties do not disagree with these basic principles. However, they dispute the standard of review we are to apply to the circuit court's final determination that Peterson was not "totally disabled." Peterson, while asserting that the policy definition of "totally disabled" is unambiguous, also equates the term "totally disabled" with a legal standard, and he cites *Halverson v. River Falls Youth Hockey Ass'n*, 226 Wis. 2d 105, 115, 593 N.W.2d 895, 900 (Ct. App. 1999), for the proposition that we review the application of findings of fact to a legal standard *de novo*.

■■

¶ 13. Although it interprets the policy definition differently, Pennsylvania Life also contends that the policy language is unambiguous. It maintains the sole issue on appeal is whether the circuit court's finding that Peterson was not totally disabled is clearly erroneous. Because the parties' interpretations of the policy definition at issue are inconsistent, we conclude we are required to determine first, whether the policy is ambiguous; second, the meaning of the definition of "to-

tally disabled" set forth in the policy; and third, whether the circuit court's findings are clearly erroneous.

## Total Disability.

### *1. Policy Provisions.*

¶ 14. Peterson argues that the only reasonable interpretation of "totally disabled" is if the insured "was unable to do his own occupation or other occupations for which he has, or later acquires, education, training or experience." He then adds that he is not disqualified from benefits by this definition because his current level of education, training or experience are insufficient to make him employable. For example, he would consider himself qualified to work as a lumberyard salesman only if he had had experience working as a lumberyard salesman. He relies on *Harker v. Paul Revere Life Insurance Co.*, 28 Wis. 2d 537, 546, 137 N.W.2d 395, 400 (1965) for this argument.

¶ 15. By contrast, Pennsylvania Life argues that the determination of whether Peterson is "qualified" for a particular occupation has little to do with whether he has ever worked in such an occupation. It maintains that "qualified" refers to whether the insured has the education, training or experience to enable him to do the job. Pennsylvania Life argues, "[o]ne can be qualified to perform a job without ever having worked in the job."

¶ 16. We construe an insurance policy as it would be understood by a reasonable person in the position of an insured. *Garriguenc v. Love*, 67 Wis. 2d 130, 134–35, 226 N.W.2d 414, 417 (1975). We begin with the terms set out in the policy to determine whether they are ambiguous. *United States Fire Ins. Co. v. Ace Baking Co.*, 164

Wis. 2d 499, 502–03, 476 N.W.2d 280, 282 (Ct. App. 1991). A policy term is not ambiguous merely because the parties disagree as to its meaning. *Id.* at 503–04, 476 N.W.2d at 282. Language of an insurance contract is to be given its common and ordinary meaning. *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 31, 233 Wis. 2d 314, 607 N.W.2d 276. The terms of a policy are unambiguous if they are not reasonably susceptible of more than one construction from the viewpoint of an insured of ordinary intelligence. *Schroeder v. Blue Cross & Blue Shield*, 153 Wis. 2d 165, 174, 450 N.W.2d 470, 473 (Ct. App. 1989). If the terms of an insurance policy are unambiguous, we will not rewrite the policy, but will simply apply it as written to the facts of the case. *Continental Cas. Co. v. Homontowski*, 181 Wis. 2d 129, 133, 510 N.W.2d 743, 745 (Ct. App. 1993).

■

¶ 17. The policy provision at issue defines "totally disabled" is as follows:

> TOTAL DISABILITY: TOTALLY DISABLED means that you . . . are unable to engage in any employment or occupation for which you . . . are or become qualified by reason of education, training or experience.

We first note that the definition is not limited to an insured's ability to engage in the same employment[3] he had before the injury. Instead, we are to consider "any employment" as relevant to determining total disability.

---

[3] It is possible to purchase a disability policy that provides benefits if the insured is unable to pursue his current occupation or employment. *See Gillen v. Life Ins. Co of North America*, 199 F. Supp. 2d 900, 902 (W.D. Wis. 2001); *Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp. 2d 978, 985 (E.D. Wis. 2000). However, Peterson did not purchase an occupational disability policy.

Nor does the policy definition import the contention of Peterson that he must currently have the education, training or experience to qualify for employment. Rather, it states that an insured may either be or "become qualified" to engage in employment and thereby not be totally disabled within the policy definition. "Become" looks to the future; it cannot reasonably be understood to apply only to the specific skills an insured has at a given moment. However, it does imply that the insured must be reasonably capable of acquiring the education, training or experience to be employable. *See Drexler v. All American Life & Cas. Co.*, 72 Wis. 2d 420, 429, 241 N.W.2d 401, 406 (1976). Accordingly, we conclude that the policy definition unambiguously provides that an insured is totally disabled if: (1) he cannot engage in any employment or occupation with normal on-the-job training and with his current education, training and experience or (2) he cannot engage in any employment or occupation with education, training or experience that he can reasonably be expected to obtain.[4] Accordingly, we review the record to determine whether the circuit court's finding that Peterson is not totally disabled is clearly erroneous.

### 2. Peterson's Status.

¶ 18. Peterson argues that even if we determine that we review the court's decision as a factual one, the record does not support a finding that he is qualified for any other employment or occupation that is available. He argues that the undisputed facts of record show, through the testimony of Pedracine, that he does not

[4] We do not address whether Peterson has any obligation to complete additional education or training so he may become employable in areas of employment for which he is not now qualified.

have the necessary skills for the occupations the court found he could do, only that he may have the ability to acquire them. This he maintains is insufficient. He relies on a discussion in *Harker*, where the court described what a manual laborer could do and reviewed whether the evidence was sufficient to support the jury's finding of total disability in spite of Harker's repeated attempts at employment since his accident. *See Harker*, 28 Wis. 2d at 549, 137 N.W.2d at 401–02.

¶ 19. *Harker* is not helpful to Peterson for at least three reasons. First, Harker had repeatedly tried to find suitable employment and had repeatedly failed to be able to perform the jobs that might have seemed suitable to a manual laborer. Second, the definition of disability in Harker's policy differed from what is present here in that it did not address occupations for which Harker could reasonably "become qualified," as the Pennsylvania policy does. Third, the case turned on whether Harker's attempting several jobs prevented him from coming within the policy's definition of totally disabled, not on what occupations he could or could not do. Here, Peterson has never tried to find a job, and the record shows he has many employment possibilities. It is true that the record would not support a factual finding of disability if it showed that the jobs the court found Peterson could perform required a college or graduate school education. As the supreme court explained in *Harker*:

> Total disability is a relative concept. What may totally disable a manual laborer may not totally disable a business executive, physician, or lawyer within the scope of a total-disability clause of an insurance policy. This is particularly true where the policy employs qualifying language . . . which limits the occupations

779

the insured is disabled from engaging in to those for which he is "reasonably fitted by education, training and experience."

*Id.* at 547, 137 N.W.2d at 400–01. However, the types of employment the circuit court considered here were those jobs for which Peterson already had the skills or for which he could reasonably obtain the skills through on-the-job training.

¶ 20. For example, Pedracine, a vocational specialist, testified that Peterson acquired numerous skills working as a roofer and rough carpenter that could be "utilized in a lot of different jobs." He identified four occupations that were "within his capabilities," based on his training and experience, his disability and his work restrictions. Deborah Peck's testimony substantially corroborated Pedracine's testimony. Accordingly, we conclude that the circuit court's finding that Peterson is not totally disabled is not clearly erroneous, and we affirm the judgment that Pennsylvania Life did not breach the contract.

## CONCLUSION

¶ 21. We conclude that because the policy definition of "totally disabled" unambiguously provides that Peterson is not totally disabled if he is or may reasonably become qualified for any occupation by reason of education, experience or training and because the finding of the circuit court that he is not totally disabled is not clearly erroneous, we affirm the judgment.

*By the Court.*—Judgment affirmed.